**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | | |
|---|---|---|
| EDWIN L. RESO, for the use and benefit of THE ARTISAN INTERNATIONAL FUND, THE ARTISAN INTERNATIONAL VALUE FUND and THE ARTISAN MID CAP VALUE FUND, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:11-cv-00873-JPS |
| vs. | ) ) | |
| ARTISAN PARTNERS LIMITED PARTNERSHIP, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO DISMISS

John W. Rotunno (SBN IL/02405342)
john.rotunno@klgates.com
Paul J. Walsen (SBN IL/6226318)
paul.walsen@klgates.com
Joseph C. Wylie II (SBN IL/6270852)
joseph.wylie@klgates.com
Molly K. McGinley (SBN IL/6285809)
molly.mcginley@klgates.com
K&L GATES LLP
70 West Madison Street
Suite 3100
Chicago, IL 60602
Telephone: 312.807.4244
Facsimile: 312.827.1278

Daniel E. Conley (SBN/1009443)
daniel.conley@quarles.com
Joseph O. Wilson (SBN/1052468)
joe.wilson@quarles.com
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone: 414.277.5609
Facsimile: 414.978.8609

*Attorneys for Defendant Artisan Partners Limited Partnership*

# Table of Contents

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................1

II.    STATEMENT OF FACTS ................................................................................2

III.   ARGUMENT ....................................................................................................4

      A.     Pleading Standards ................................................................................4

      B.     Reso Has Failed To State A Claim Under Section 36(b)........................5

            1.     Reso Misstates The Standard For Liability................................6

            2.     Reso's Generic Allegations Attacking The Mutual Fund Industry As A Whole Should Be Disregarded ........................8

            3.     The *Gartenberg* Factors ........................................................9

                   a.     Independence, Care And Conscientiousness Of The Funds' Disinterested Directors In Approving The Advisory Agreements ................................................................10

                   b.     The Nature And Quality Of The Services Provided By APLP......14

                   c.     Comparative Fee Structures ........................................17

                             i.     Fees Charged To Other Clients Of APLP........................17

                             ii.     Fees Charged To Other Funds By Other Advisers ...........19

                   d.     Whether Economies Of Scale Exist And Are Appropriately Shared ........................................................21

                   e.     Costs And Profitability Of Providing Investment Management Services ........................................................23

IV.   CONCLUSION ................................................................................................24

# Table of Authorities

## Cases

*Amron v. Morgan Stanley Inv. Advisors, Inc.*,
464 F.3d 338 (2d Cir. 2006)................................................................ passim

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)....................................................................... passim

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................ 4, 13, 24

*Bellikoff v. Eaton Vance Corp.*,
481 F.3d 110 (2d Cir. 2007)...................................................................... 17

*Benak v. Alliance Capital Mgmt. L.P.*,
No. 01-cv-5734, 2004 WL 1459249 (D.N.J. Feb. 9, 2004) ............................... 9

*Bissessur v. Indiana Univ. Bd. of Trustees*,
581 F.3d 599 (7th Cir. 2009) ................................................................... 4, 24

*Boyce v. AIM Mgmt. Group, Inc.*,
No. 04-cv-02587, 2007 WL 7117575 (S.D. Tex. Sept. 17, 2007).................... 19

*Gallus v. Ameriprise Fin., Inc.*,
497 F. Supp. 2d 974 (D. Minn. 2007), *rev'd*, 561 F.3d 816 (8th Cir. 2009),
*vacated by* 130 S. Ct. 2340 (2010)............................................................. 8

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
694 F.2d 923 (2d Cir. 1982)................................................................. passim

*Green v. Nuveen Advisory Corp.*,
295 F.3d 738 (7th Cir. 2002) ...................................................................... 7

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ...................................................................... 3

*Hoffman v. UBS-AG*,
591 F. Supp. 2d 522 (S.D.N.Y. 2008)....................................................... passim

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
No. 04-cv-4885, 2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) ........................... 12

*In re Evergreen Mut. Funds Fee Litig.*,
240 F.R.D. 115 (S.D.N.Y. 2007) ........................................................... 18, 22

*In re Franklin Mutual Fund Fee Litig.*,
478 F. Supp. 2d 677 (D.N.J. 2007) ................................................... 16, 17, 19

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
528 F. Supp. 2d 332 (S.D.N.Y. 2007), *rev'd in part on other grounds
sub nom R.W. Grand Lodge of F. & A.M. of Pa. v. Salomon Bros. All Cap.
Value Fund, et al.*, 425 Fed. Appx. 25 (2d Cir. 2011) ........................ 14, 21, 22, 24

Case 2:11-cv-00873-JPS   Filed 10/07/11   Page 3 of 30   Document 62

*In re Scudder Mut. Funds Fee Litig.*,
No. 04-cv-1921, 2007 WL 2325862 (S.D.N.Y. Aug. 14, 2007).................................. 20, 22

*Jelinek v. Capital Research Mgmt. Co.*,
No. 10-55221, 2011 WL 3701742 (9th Cir. Aug. 24, 2011) ............................................ 7

*Jones v. Harris Assocs.*, *L.P.*,
130 S. Ct. 1418 (2010) ................................................................................ passim

*Jones v. Harris Assocs., L.P.*,
2007 WL 627640 (N.D. Ill. Feb. 27, 2007), *aff'd on other grounds*,
527 F.3d 627, *vacated by* 130 S. Ct. 1418 ............................................................... 18

*Jones v. Harris Assocs., L.P.*,
527 F.3d 627, *vacated by* 130 S. Ct. 1418 (2010) ...................................................... 5, 11

*Kamen v. Kemper Financial Svcs, Inc.*,
908 F.2d 1338 (7th Cir. 1990), *rev'd in part on other grounds*, 500 U.S. 90, 111
S. Ct. 1711 (1991)....................................................................................... 8

*Krantz v. Prudential Investments Fund Mgmt. LLC*,
305 F.3d 140 (3d Cir. 2002)........................................................................... 12

*Krinsk v. Fund Asset Mgmt, Inc.*,
875 F.2d 404 (2d Cir. 1989)........................................................................... 22

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
248 F.3d 321 (4th Cir. 2001) ................................................................... passim

*Pepper v. Litton*,
308 U.S. 295 (1939)................................................................................. 7, 8

*Pugh v. Tribune Co.*,
521 F.3d 686 (7th Cir. 2008) .......................................................................... 3

*Tellabs, Inc. v. Makor Issues and Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................... 3

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir. 1993) .......................................................................... 3

*Verkouteren v. Blackrock Fin. Mgmt., Inc.*,
No. 98-cv-4673, 1999 WL 511411 (S.D.N.Y. July 20, 1999)......................................... 12

*White v. Marshall & Ilsey Corp.*,
No. 10-CV-311, 2011 WL 2471736 (E.D. Wis. June 21, 2011) ...................... 4, 6, 15, 16

### Statutes

15 U.S.C. § 80a-14................................................................................... 1

15 U.S.C. § 80a-15................................................................................. 4, 13

15 U.S.C. § 80a-2................................................................................. 3, 12

15 U.S.C. § 80a-35.................................................................................................... 1, 4, 5

**Rules**

Fed. R. Civ. P. 8...................................................................................................... 8

Case 2:11-cv-00873-JPS    Filed 10/07/11    Page 5 of 30    Document 62

Defendant Artisan Partners Limited Partnership ("APLP"), by its undersigned counsel, hereby respectfully submits this Memorandum of Law in support of its Renewed Motion to dismiss the Complaint of Plaintiff Edwin L. Reso for failure to state a claim upon which relief can be granted under Section 36(b) of the Investment Company Act of 1940 (the "ICA"), as amended, 15 U.S.C. § 80a-35(b) ("Section 36(b)").

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Edwin L. Reso, a shareholder in the Funds, contends that APLP, the investment adviser to the Funds, has breached its statutory fiduciary duty under Section 36(b) of the ICA "with respect to the receipt of compensation for services" performed on behalf of Artisan International Fund, Artisan International Value Fund, and Artisan Mid Cap Value Fund (each a "Fund," and together, the "Funds").  The compensation was paid to APLP pursuant to investment advisory agreements approved by a majority of the members of the Board of Directors of Artisan Partners Funds, Inc.[1] (the "Board") who are not "interested persons," as that term is defined in the ICA (the "Disinterested Directors"), and by the Board as a whole, as required by the ICA, 15 U.S.C. § 80a-14(a).

Reso's Complaint expounds at length upon perceived deficiencies in the mutual fund industry in general, drawing upon the views of industry critics and commentators, but contains little pertaining specifically to APLP and the Funds for which it has served as investment adviser.  Those few allegations that are directed to APLP and the Funds fall well short of pleading a claim that is plausible on its face under the standard adopted by the Supreme Court in *Jones v. Harris Assocs.*, *L.P.*, 130 S. Ct. 1418 (2010), governing claims under Section 36(b).  As a result, the Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1]  Prior to July 1, 2011, Artisan Partners Funds, Inc. was known as Artisan Funds, Inc.

## II. STATEMENT OF FACTS

Each of the Funds is a separate series of Artisan Partners Funds, Inc., a registered open-end management investment company, commonly called a mutual fund. (Compl. ¶ 5) APLP serves as the investment adviser to the Funds. (*Id.* ¶¶ 6, 8)

As the Funds' investment adviser, APLP provides services necessary to the operation of the Funds. These services include, among many other things, making investment decisions to buy and sell securities and other financial instruments for the Funds; placing the Fund's portfolio transactions with broker-dealers, and negotiating the terms of such transaction services with those broker-dealers; providing personnel to serve as officers of the Funds and as members of the Funds' valuation committee; preparing the Funds' regulatory filings, which include the Funds' registration statement, statutory and summary prospectuses and statements of additional information, reports to shareholders, and semiannual reports to the Securities and Exchange Commission, among other regulatory filings; managing the Funds' legal, regulatory and compliance matters; monitoring shareholder trading activity; preparing (or supervising the preparation of) Board meeting materials; maintaining the calendars of the Board; providing or supervising the provision of Fund and shareholder services by the Funds' accounting and transfer agents; preparing Fund financial statements and coordinating financial statement audits; supervising tax return preparation; and furnishing all office facilities, equipment and personnel necessary to manage and supervise all of each Fund's business and affairs. (*Id.* ¶¶ 8, 34; Investment Advisory Agreement for Artisan International Fund (cited in Compl. ¶ 31), Appendix to Memorandum in Support of Renewed Motion to Dismiss (hereinafter "App.") Exhibit A, at 1; Amendment No. 1 to Registration Statement of Artisan Partners Asset Management Inc. (hereinafter referred to as "Amended S-1;" cited in Compl. ¶ 82 and publicly available at http://www.sec.gov/Archives/edgar/data/517302/000119312511142019/ds1a.htm), App. Exhibit D at 29; Statement of Additional Information dated January 28, 2011, as supplemented May 26, 2011 (hereinafter referred to as "SAI;" cited in Compl. ¶ 57 and publicly available at

http://www.sec.gov/Archives/edgar.data/935015/000119312511151742/d497.htm), App. Exhibit E. at 45-46, 54).[2]

APLP performs these services pursuant to Investment Advisory Agreements applicable to each of the Funds (together, the "Advisory Agreements"). (Compl. ¶ 8) As set forth in the Advisory Agreements, APLP receives a monthly fee from each Fund, computed as a percentage of that Fund's average daily net assets. (*Id.* ¶ 32) The fee structure for each Fund includes various "breakpoints," which are asset thresholds beyond which the percentage used to compute the fee paid to APLP declines. (*Id.* ¶ 33) The terms of each Advisory Agreement are substantially the same, although the fee schedule for Artisan International Fund (the assets of which are greater than those of either of the other two Funds) contains an additional breakpoint. (Investment Advisory Agreement for Artisan International Fund (cited in Compl. ¶ 31), App. Exhibit A; Investment Advisory Agreement for Artisan International Value Fund (cited in Compl. ¶ 31), App. Exhibit B; Investment Advisory Agreement for Artisan Mid Cap Value Fund (cited in Compl. ¶ 31), App. Exhibit C).

As required by Section 15(a) of the ICA, continuation of the Advisory Agreements must be approved annually by the vote of a majority of the members of the Board who are not "interested persons" of the Funds or APLP, as defined by the ICA,[3] and by the Board as a whole or by a majority of each Fund's shareholders. 15 U.S.C. §§ 80a-15(a), (c).

The ICA imposes upon investment advisers a fiduciary duty with respect to the receipt of compensation from a mutual fund. *Jones*, 130 S. Ct. at 1423; 15 U.S.C. § 80a-35 (b). In this

---

[2] Each of these documents is cited or relied upon in Reso's Complaint. Both the Supreme Court and the Seventh Circuit have approved consideration of documents referenced in a complaint in ruling on a motion to dismiss. *Tellabs*, *Inc. v. Makor Issues & Rights*, *Ltd.*, 551 U.S. 308, 322 (2007); *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). In addition, in considering a motion to dismiss, a court may take judicial notice of documents in the public record. *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008). A motion to dismiss is not converted into one for summary judgment when documents quoted by, relied upon in, or otherwise integral to the complaint are considered. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

[3] An interested person is one who has an interest in or affiliation with the investment adviser. 15 U.S.C. § 80a-2 (a)(19).

case, Reso attempts to allege that APLP has breached this duty with respect to the compensation it received for services provided to the Funds. For the reasons discussed below, this attempt has failed.

### III. ARGUMENT

#### A. Pleading Standards

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order to state a claim that is plausible on its face, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *White v. Marshall & Ilsey Corp.*, No. 10-CV-311, 2011 WL 2471736 at *2 (E.D. Wis. June 21, 2011) (*quoting Iqbal*, 129 S. Ct. at 1949). A "statement of facts that merely creates a suspicion [of] a legally cognizable cause of action" is insufficient. *Twombly*, 550 U.S. at 555 (*quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, 235-36 (3d ed. 2004)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 129 S. Ct. at 1949, and a complaint pleading facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility . . . ." *Id.* (*citing Twombly*, 550 U.S. at 557). In assessing whether a complaint states a plausible claim for relief, the court must disregard conclusions couched as factual allegations, as well as allegations which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim. *Id.* at 1951 (*quoting Twombly*, 550 U.S. at 555); *see also*, *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) ("threadbare recitation of the elements of a claim without factual support" do not suffice).

The Supreme Court has described a two-step approach to be followed by courts considering a motion to dismiss. A court should begin by identifying conclusions, which are not entitled to be taken as true, and exclude those allegations from further consideration. *Id.* The court should then assume the truth of the remaining well pleaded allegations and "determine

whether they plausibly give rise to an entitlement to relief." *Id.* at 1950-51. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)).

### B.     Reso Has Failed To State A Claim Under Section 36(b)

Section 36(b) of the ICA provides that "the investment adviser of a registered investment company [mutual fund] shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company . . . to such investment adviser . . . ." 15 U.S.C. § 80a-35(b). Section 36(b) also provides that a fund shareholder may sue the adviser for a breach of such duty, but precludes an award of damages "for any period prior to one year before the action was instituted [in this case, June 24, 2011]." 15 U.S.C. § 80a-35(b) and (b)(3). In any such action, the approval of the adviser's fee by a fund's board is to be given "such consideration by the court as is deemed appropriate under all the circumstances." *Id.* § 80a-35(b)(1), (2).

In its recent decision in *Jones*, the Supreme Court adopted the standard for liability under Section 36(b) articulated by the Second Circuit in its 1982 decision *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir.1982).[4] *Jones*, 130 S. Ct. at 1425-26. Under that standard, "to face liability under §36(b)," an investment adviser must charge a fee that is excessive in the sense that it is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Id.*

---

[4] *Jones* reached the Supreme Court on petition for writ of certiorari from a ruling of the Seventh Circuit which had rejected the *Gartenberg* standard. 130 S. Ct. at 1424-25 (*citing Jones v. Harris Assocs. L.P.*, 527 F.3d 627 (7th Cir. 2008), *vacated by* 130 S. Ct. 1418 (2008)).

1. *Reso's Complaint is Premised Upon an Erroneous Standard For Liability*

Reso alleges that "a fee that is . . . not reasonable, is a breach of fiduciary duty." (Compl. ¶ 25) This legal conclusion is not, of course, to be taken as true in considering the present Motion. *Iqbal*, 129 S. Ct. at 1951; *Marshall & Ilsey Corp.*, 2011 WL 2471736 at *2. Moreover, it is not a correct statement of the law under Section 36(b). Congress expressly rejected a "reasonableness" standard for adviser compensation under the ICA, recognizing that subjecting advisory fees to a "reasonableness" review would have the undesired effect of "charging the courts with rate-setting responsibilities." *Jones*, 130 S. Ct. at 1430. Consistent with *Jones*, the Court should refuse Reso's request for judicial supervision over the "reasonableness" of investment advisory fees. *Id.* ("Congress' approach recognizes that courts are not well suited to make such precise calculations").

This is not Reso's only misstatement of the law. Reso's Complaint is based in part upon the theory that if the process of negotiating an advisory fee ostensibly is flawed, a Section 36(b) claim may lie even where the advisory fee resulting from that process is not excessive. Specifically, Reso alleges that the fiduciary duty standard of Section 36(b) "requires both good faith in the negotiation process and a fair outcome." (Compl. ¶ 26; *see also* ¶ 38) This is a misstatement of the standard applicable to excessive fee claims under Section 36(b).[5]

A deficient process cannot give rise to a breach of an adviser's fiduciary duty established under Section 36(b) if the fee resulting from that process is not excessive. Put simply, if the fee does not meet the "so disproportionately large" standard of *Gartenberg*, as adopted in *Jones*, there can be no liability under Section 36(b) for receipt of an excessive fee. *Jones*, 130 S. Ct. at 1430 ("Section 36(b) is sharply focused on the question of whether the fees themselves were excessive") (*quoting Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 328 (4th Cir. 2001)). As the Supreme Court emphasized in *Jones*, the ICA imposes a "fiduciary duty with respect to the *receipt of compensation* for services, or of payments of a material nature." *Id.* at

---

[5] The insufficiency of Reso's allegations concerning supposed deficiencies in the process followed by the Board of Artisan Partners Funds, Inc. is discussed *infra* at pages 10-13.

1430 (emphasis in original) (*quoting* Section 36(b)).  Thus, although the quality and integrity of the process followed by a board may impact the degree of deference to be afforded to a board's decision to approve an advisory fee agreement, it is not in itself a determinant of whether Section 36(b) has been violated.

As the Supreme Court explained in *Jones*, if a board process was "robust," the board's decision to approve an advisory agreement should be given "considerable weight."  *Id.* at 1429.  If the process was deficient or based upon incomplete information, the court should "take a more rigorous look" at the outcome, *i.e.*, the resulting fee.  *Id.* at 1430.  Thus, even in the event of a deficient process or misinformed board, the focus remains where it belongs under Section 36(b) – on the fee itself.  *Id.*  Accordingly, and contrary to Reso's allegations, an asserted deficiency in process alone cannot give rise to a violation of Section 36(b).  As the Supreme Court made clear in *Jones*, liability attaches under Section 36(b) *only* when the adviser charges an excessive fee. *Id.* at 1426 ("[T]o face liability under § 36(b), an investment adviser *must* charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." (emphasis supplied).)[6]  Reso's effort to elevate *process* to the same importance as *outcome* (*see* Compl. ¶¶ 26, 38) is wrong as a matter of law.

Equally incorrect is Reso's assertion (embedded in his quotation of *Pepper v. Litton*, 308 U.S. 295 (1939)), that APLP bears the burden of establishing the good faith and inherent fairness of its Advisory Agreements with the Funds.  (Compl. ¶ 26)  The Supreme Court specifically called out the inapplicability of this aspect of *Pepper* in *Jones*, stating that the ICA modifies the

_____

[6]  In light of the Supreme Court's holding in *Jones* that Section 36(b) is "sharply focused on the question of whether the fees themselves were excessive" (*Jones*, 130 S. Ct. at 1430), the "slightly more broad[]" interpretation of Section 36(b) suggested by the "improbable case" described in dicta in the Seventh Circuit's decision in *Green v. Nuveen Advisory Corp.*, 295 F.3d 738, 743 n.8 (7th Cir. 2002), is of no continuing vitality.  Similarly, to the extent that dicta in *Jelinek v. Capital Research Mgmt. Co.*, No. 10-55221, 2011 WL 3701742 (9th Cir. Aug. 24, 2011), may be read to suggest that Section 36(b) may support a claim based on the theory that an adviser has used fees for an improper purpose, the case is contrary to the Supreme Court's holding in *Jones*.  In any case, Reso's Complaint does not assert that the fees paid to APLP by the Funds were used for an improper purpose.

fiduciary duty defined in *Pepper* "in a significant way," in that it shifts to the party claiming a breach of Section 36(b)'s statutory duty the burden "to show that the fee is outside the range that arm's-length bargaining would produce." *Jones*, 130 S. Ct. at 1427.

> ### 2. Reso's Generic Allegations Attacking The Mutual Fund Industry As A Whole Should Be Disregarded

In order to state a claim that is plausible on its face, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (emphasis supplied). Much of Reso's Complaint, however, is completely irrelevant to the issue of whether the Complaint alleges a plausible claim that the defendant here, APLP, has violated Section 36(b) in any way.

Reso devotes paragraph upon paragraph of his Complaint to generic allegations railing against the mutual fund industry as a whole, including quotations from Warren Buffett, John Bogle, and commentators with interests at stake – such as Steve Pomerantz, an "expert" paid to offer opinion testimony on behalf of plaintiffs in other Section 36(b) litigation filed by the same counsel representing Reso here. (Compl. ¶¶ 15-17, 23, 35, 59, 69, 73-74, 79; *see, e.g.*, *Gallus v. Ameriprise Fin., Inc.*, 497 F. Supp. 2d 974, 980-81 (D. Minn. 2007) (referring to proposed testimony by plaintiffs' expert Steve Pomerantz), *rev'd*, 561 F.3d 816 (8th Cir. 2009), *vacated by* 130 S. Ct. 2340 (2010)). These allegations add nothing to the Complaint apart from length.[7] They provide no facts supporting a reasonable inference that *APLP* has breached its fiduciary duty under Section 36(b). Reso's generic allegations should therefore be disregarded. *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 342-44 (2d Cir. 2006) (affirming dismissal of Section 36(b) claim where complaint "rel[ied] heavily on generalities about deficiencies in the securities industry, and statements made by industry critics and insiders," but failed to "set forth those facts necessary to a finding that the fees were excessive"); *Hoffman v. UBS-AG*, 591 F.

---

[7] Perhaps Reso believes that evidence relating to these allegations will appeal to the jury he has demanded in this case. If so, this belief is based on an unfounded premise. No right to trial by jury exists for claims under Section 36(b). *See Kamen v. Kemper Fin. Servs., Inc.*, 908 F.2d 1338, 1350-51 (7th Cir. 1990) (affirming ruling of the district court denying jury trial on a claim under Section 36(b)), *rev'd in part on other grounds*, 500 U.S. 90, 111 S. Ct. 1711 (1991).

Supp. 2d 522, 541 (S.D.N.Y. 2008) (dismissing Section 36(b) claim; holding that allegations based upon statements by SEC officials and magazine articles that did not refer to the defendant could not satisfy the *Gartenberg* factor pertaining to the independence and conscientiousness of the fund's directors).

### 3. The Gartenberg Factors

The *Gartenberg* decision, approved by the Supreme Court in *Jones* as "correct in its basic formulation of what § 36(b) requires," established a non-exclusive list of six factors that the courts typically weigh in making the determination of whether an advisory fee is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining. Those six factors are: (1) the nature and quality of the services provided to the fund and its shareholders; (2) the profitability to the adviser of its relationship with the fund; (3) "fall-out" benefits to the adviser;[8] (4) whether economies of scale achieved by a mutual fund are shared with fund investors; (5) comparative fee structures; and (6) the independence, expertise, and conscientiousness of the disinterested members of the board in evaluating the advisory fee. *Gartenberg*, 694 F.2d at 929-32. No single factor is dispositive of this inquiry. *Benak v. Alliance Capital Mgmt. L.P.*, No. 01-cv-5734, 2004 WL 1459249, at *9 (D.N.J. Feb. 9, 2004) (dismissing Section 36(b) complaint; "Plaintiff has not pointed to a single case where allegations of excessive fees were sustained on the basis of only one of the six factors").

The Complaint in this case attempts to plead each of the *Gartenberg* factors other than fall-out benefits, a factor which Reso apparently concedes does not support his claim against APLP. As discussed below, however, Reso has failed to plead facts sufficient to satisfy any of the other *Gartenberg* factors, as would be required to state a plausible claim under Section 36(b).

---

[8]  Fall-out benefits are "collateral benefits that accrue to the adviser because of its relationship with the mutual fund. . . ." *Jones*, 130 S. Ct. at 1426 n.5.

Reso's effort to plead facts supporting his claim under this *Gartenberg* factor is notable for what it does *not* include. Reso offers the Court *no facts* concerning the qualifications and experience of the Board, or the assistance the Disinterested Directors receive from *their* independent counsel in connection with their review of the Agreements. This information is readily available – it appears at pages 24-25 and 66 of Artisan Funds' SAI filed with the Securities and Exchange Commission, which is cited in Paragraph 57 of Plaintiff's Complaint and included in the Appendix filed herewith as Exhibit E. The Disinterested Directors are highly qualified and successful businessmen. The Independent Chair of the Board of Directors, disinterested director David A. Erne, is an attorney and trustee of Northwestern Mutual Life Insurance Company. (SAI, App. Exhibit E at 24) Disinterested director Patrick S. Pittard formerly was a Distinguished Executive in Residence at University of Georgia and the Chairman of the Board, President and Chief Executive Officer of Heidrick & Struggles International, Inc., a publicly traded international executive search and leadership consulting firm. (*Id*. at 25) Disinterested director Howard B. Witt is the former Chairman of the Board, President and Chief Executive Officer of Littelfuse, Inc., a publicly traded manufacturer of advanced circuit protection devices. (*Id*.) Disinterested director Thomas R. Hefty, also an attorney, is the former President of the Kern Family Foundation, former Chairman of the Board and Chief Executive Officer of Cobalt Corporation, a publicly traded provider of managed care and specialty business services, and a former Adjunct Professor in the Department of Business and Economics at Ripon College. (*Id*. at 24) Jeffrey A. Joerres, current Chairman of the Board, President and Chief Executive Officer of Manpower, Inc., a publicly traded, non-governmental employee services organization, was a disinterested director at the time the Board voted to approve the Advisory Agreements in effect during the one-year period prior to the filing of this action.

There is no allegation (nor can there be) that that these respected businessmen engaged in self-dealing or other intentional malfeasance in breach of their duties to the Funds, or that they were dominated and controlled by an insider, or someone tantamount to an insider, who had

"Svengali-like sway" over their deliberations. *See Jones*, 527 F.3d at 630 (finding inapposite plaintiffs' assertion that the presence of a purportedly interested trustee during the board's approval of the fee agreements somehow poisoned their decisions, in view of the presence of a majority of trustees who were independent), *vacated on other grounds by* 130 S. Ct. 1418 (2010).

The facts Reso does plead concerning the Board and its processes are sparse.[9]  First, Reso alleges that the Disinterested Directors are "well compensated," and that they purportedly are "at least partially dependent on the continued good will and support of the Defendant APLP" in order to continue as members of the Board.  (Compl. ¶¶ 43-44)  However, even Reso concedes that these allegations do not render the Disinterested Directors "interested" within the meaning of the ICA.  (Compl. ¶ 45 ("even if statutorily 'non-interested'. . .")) This concession is not accidental.

The ICA defines an "interested person" as one coming within one of six categories, including any "affiliated person" of the investment adviser.  15 U.S.C. § 80a-2(a)(19)(B)(i).  An "affiliated person" includes a person (or entity) "controlled by" another person.  15 U.S.C. § 80a-2(a)(3).  "Control" is "the power to exercise a controlling influence over the management or policies of a company."  15 U.S.C. § 80a-2(a)(9).  A statutory presumption exists *against* a claim that a natural person is controlled by another person or an entity.  *Id.* ("A natural person shall be presumed not to be a controlled person within the meaning of this subchapter.").

Allegations of the type proffered by Reso here "relate too tangentially to the simple question of whether the investment advisers received excess compensation for the services they rendered."  *Migdal*, 248 F.3d at 329 (affirming dismissal of complaint and holding that allegations that directors received substantial compensation and were dependent on the adviser are insufficient to sustain an action under Section 36(b)); *Krantz v. Prudential Invs. Fund Mgmt.*

---

[9]  As noted in Section III.B.1., Reso's assertion in paragraphs 26 and 38 of his Complaint that liability may arise under Section 36(b) if an investment adviser's fee is not excessive but the process is deficient in some way is incorrect under *Jones*.  130 S. Ct. at 1429-30.

*LLC*, 305 F.3d 140, 142-44 (3d Cir. 2002) (affirming dismissal of a Section 36(b) claim and holding that allegations that directors received a "large aggregate compensation" and served on multiple fund boards are insufficient to support a claim that they were interested); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04-cv-4885, 2006 WL 74439, at *3-4 (S.D.N.Y. Jan. 11, 2006) (dismissing Section 36(b) complaint and holding allegations that disinterested directors received generous salaries, were beholden to the adviser for their positions and were recommended for their positions by the adviser failed to rebut presumption of independence under the ICA); *Verkouteren v. Blackrock Fin. Mgmt., Inc.*, No. 98-cv-4673, 1999 WL 511411, at *2-4 (S.D.N.Y. July 20, 1999) (dismissing complaint and holding that allegations that "outside directors all receive substantial compensation," were appointed by the adviser, and "serve at the pleasure of . . . the Adviser" failed to meet the standard for liability under Section 36(b)).

Reso's allegation that because the Disinterested Directors obtain and rely upon information "packaged and presented" by APLP (Compl. ¶ 45), they ostensibly are "in all practical respects dominated and unduly influenced by" APLP (*id.*), also is insufficient as a matter of law to state a plausible claim. *Migdal*, 248 F.3d at 331 ("plaintiffs' assertions that the directors were dependent on the investment advisers for information sheds no light on the question of whether the directors are disinterested"). As the Fourth Circuit noted in *Migdal*, "[o]ne would expect any conscientious director to request information from management and staff on the day-to-day operations for which they are responsible." *Migdal*, 248 F.3d at 331. Moreover, Section 15(c) of the ICA makes it the "*duty* of the directors of a registered investment company to request and evaluate, and the *duty* of the investment adviser to such company to furnish, such information as may reasonably be necessary to evaluate the terms" of an investment advisory agreement. 15 U.S.C. § 80a-15(c) (emphasis supplied). It simply cannot be the case that compliance with a statutorily imposed duty to provide a fund board with information that it in turn has a duty to request renders the board "dominated and unduly influenced" by the fund's adviser. In addition, nothing in Section 15(c) limits the ability of the

disinterested members of a mutual fund board to consider advice and information provided by its independent counsel, or comparative fee and performance data compiled by independent third parties such as Lipper Inc., nor does the Complaint in this case assert that the Disinterested Directors of the Funds lacked or were denied access to such sources of information and advice. Thus, although the Complaint alleges that information provided to the Board was "packaged and presented" by APLP, it avoids any allegation that all the information made available to the Board was *prepared* by APLP.

Reso's remaining conclusory allegations, made "on information and belief," that information received and considered by the Board was not "adequate" for undefined reasons (Compl. ¶ 46), or was somehow misleading (*id.* ¶ 47), and that the Board "rarely, if ever," questioned information or recommendations provided by the Adviser (*id.*), also are insufficient to state a plausible claim. *Twombly*, 550 U.S. at 557 (naked assertion of conspiracy "gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief") (internal quotations omitted). No non-conclusory facts are alleged concerning any respect in which the information received by the Board ostensibly was inadequate or misleading, nor are facts alleged concerning any instance in which the Board failed where appropriate to question information or recommendations provided by APLP. In short, Reso offers no non-conclusory factual averments to distinguish his allegations from unadulterated speculation.

Reso also speculates that the Board must not have had "sufficient and accurate information necessary to understand Defendant's true cost structure and, in particular, the economies of scale it enjoys in providing investment advisory services to the Funds." (Compl. ¶ 49) Putting aside the inadequacy of the Complaint's allegations concerning economies of scale (discussed in Section III. B. 3. d. of this Memorandum), it appears from Reso's own allegations that his speculative assumption that the Board lacked information concerning APLP's cost structure is based solely upon "*publicly available* documents" describing the Funds' fee schedules and "breakpoints" in those schedules. (*Id.* ¶¶ 48-49) (emphasis supplied) Nothing in

Reso's allegations is inconsistent with the Board's informed consideration, and rejection, of the assumptions concerning economies of scale that underlie the Complaint, and these allegations thus "stop short of the line between possibility and plausibility." *Iqbal*, 129 S. Ct. at 1949.

                b.      *The Nature And Quality Of The Services Provided By APLP*

Reso's Complaint alleges next to nothing regarding the services provided by APLP. He states that under the Advisory Agreements, APLP is obligated to "manage the investment and reinvestment of the assets of the Funds," to furnish "office space, equipment, and personnel to manage the business of the Funds," and to assume "expenses incurred in managing the funds," without delineation. (Compl. ¶¶ 31, 34) In lieu of identification of the particular services performed by APLP, Reso instead simply alleges ("on information and belief") that services provided by APLP other than portfolio management are "de minimis and/or do not entail significant costs" to APLP. (*Id.* ¶ 35) Reso similarly provides no detail concerning the quality of the services he alleges that APLP performs (or the quality of any of the other services provided by APLP that go unmentioned in the Complaint).

Reso's silence as to basic facts such as each Fund's performance as compared with its peers, the specific services provided to the Funds, and the costs to APLP of performing those services, renders the Complaint insufficient as a matter of law to satisfy the "nature and quality of services provided" prong of *Gartenberg*. *In re Salomon Smith Barney Mut. Fund Fees Litig*, 528 F. Supp. 2d 332, 338 (S.D.N.Y. 2007) (dismissing Section 36(b) claim based upon allegedly excessive advisory fees, 12b-1 fees, transfer agency and administrative fees, finding that complaint failed to allege sufficient facts concerning the nature and quality of "the array of services offered to Fund customers, such as telephone or web assistance or the ease with which transactions are effected"), *rev'd in part on other grounds sub nom R.W. Grand Lodge F. & A.M. v. Salomon Fros. All Cap Value Fund*, 425 Fed. Appx. 25 (2d Cir. 2011) (reversing ruling only as to Section 36(b) claim based on transfer agency fees); *Amron*, 464 F.3d at 342-45 (affirming dismissal of Section 36(b) claim where plaintiff failed to allege, among other things, that the Fund's performance was appreciably worse than comparable funds).

Reso's only allegation directed to any of the specific Funds at issue in this case is his allegation that Morningstar gave one of the three Funds, Artisan International Fund, a "Stewardship Grade" of "F" as to its fees. (Compl. ¶ 36) Reso acknowledges that other components of Morningstar's Stewardship Grade address regulatory issues, board quality, manager incentives, fees and corporate culture, but he has chosen not to inform the Court of the grades awarded to Artisan International Fund for these other components of the Stewardship Grade. The grades awarded to Artisan International Fund for each of the components of the Stewardship Grade are as follows: regulatory issues – A; board quality – B; manager incentives – C; and corporate culture – A. (*See* Morningstar Stewardship Grade for Artisan International Fund, App. Exhibit F)[10] In its Stewardship Grade report for each Fund, Morningstar opines that "Artisan deserves a great deal of credit for maintaining an investment-focused culture and generally looking out for the fundholders' interests." (App. Exhibits F through H at 2)

Reso's allegations also fail to provide the Court with information necessary to evaluate what the fee component of Morningstar's Stewardship Grade means in the context of a Section 36(b) analysis. Morningstar has explained that the fee component of its Stewardship Grade is based solely on a fund's expense ratio, and how that expense ratio compares to the expense ratios of other funds investing in similar asset types. (*See* The Morningstar Stewardship Grade for Funds (publicly available at http://corporate.morningstar.com/us/documents/ stewardshipgradefunds/StewGradeMethodology_06-10-07.pdf), App. Exhibit I at 2) Moreover, the expense ratio utilized by Morningstar in assigning its fee grade to Artisan International Fund includes not only APLP's fee for the services *it* performs on behalf of Artisan International Fund, but all other expenses incurred by the Fund, including expenses for services not performed by

---

[10] The Court may consider Morningstar's Stewardship Grades because the Complaint references and relies on these grades. *See* Note 2, *supra*; *see also*, *Marshall & Ilsey Corp.*, 2011 WL 2471736 at *7 (dismissing a complaint and considering explanatory information about ratings published at "fitchratings.com").

APLP.[11]  The grade does *not* take into account the nature or quality of the services performed by an investment adviser in exchange for its fee.  (*Id.*)

Morningstar assigned a grade of "F" to Artisan International Fund for the fee component of the Stewardship Grade for one reason: the Fund's total expense ratio falls above the 60th percentile when compared to funds deemed by Morningstar to be peer funds.  (*Id.*)  In and of itself, this sheds little or no light on whether the management fees paid by Artisan International Fund were excessive.  *Amron*, 464 F.3d at 345 (*citing Gartenberg*, 694 F.2d at 929 ("comparisons of fee structures [of different funds] are of limited value in assessing whether the fees charged by any given fund are excessive")).  As long as funds have different expense ratios, some funds will have lower expense ratios than others, and some will have higher expense ratios. Moreover, absent allegations as to the particular services provided, Reso's allegation based on the fee component of the Morningstar Stewardship Grade for the International Fund is meaningless.  *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677, 686-87 (D.N.J. 2007) (allegations based on report from "FundExpenses.com" that funds had "some of the highest fees in the industry" held insufficient to state a claim under Section 36(b) because the complaint lacked facts "show[ing] how the fees were disproportionate to the relationship between fees and services") (internal citations omitted); *see also Marshall & Ilsey Corp.*, 2011 WL 2471736 at *7 (dismissing complaint and finding after review of rating information published at "fitchratings.com" that "these ratings are not as severe as the plaintiffs portray them to be").

Reso attempts to cure this problem by alleging that the fees charged to the Funds "are disproportionate to the services rendered for those fees and could not have been the result of an arm's length negotiation."  (Compl. ¶ 37)  This allegation, however, is conclusory and thus is not to be afforded any weight in evaluating whether the Complaint states a plausible claim upon which relief can be granted.  *Iqbal*, 129 S. Ct. at 1951 (allegations which "amount to nothing

---

[11]  The 1.23% expense ratio reported by Morningstar for Artisan International Fund appears in the Complaint as the "Total Exp. Ratio" for the Fund, consisting of the advisory fee paid to APLP and "Other Expenses."  (Compl. ¶ 66)

more than a formulaic recitation of the elements" of a claim must be disregarded) (internal citations omitted); s*ee also In re Franklin*, 478 F. Supp. 2d at 686-87. Moreover, even if this conclusory allegation were supported with proper factual averments (and it is not), the Supreme Court has made clear that the standard for liability under Section 36(b) is higher – the advisory fee must be "*so disproportionately large* that it bears *no reasonable relationship* to the services rendered and could not have been the product of arm's length bargaining." 130 S. Ct. at 1426 (emphasis supplied). The Complaint falls short of this standard. *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (affirming dismissal of Section 36(b) claim where complaint failed to "specifically allege that the fees were so disproportionately large that they bore no relationship to the services rendered").

*c.* *Comparative Fee Structures*

Reso attempts to compare the advisory fees charged by APLP to the Funds with fees charged to other clients of APLP and fees charged by other advisers. (Compl. ¶¶ 64-68) Reso's attempt fails, however, because he has not pleaded facts necessary to make either comparison meaningful.

i.    Fees Charged To Other Clients Of APLP

Reso attempts to compare the advisory fees paid by the Funds to fees assertedly charged to the California Public Employees' Retirement System (CalPERS), and fees for subadvisory services performed for two non-Artisan mutual funds, Clearwater Investment Trust and Wells Fargo Advantage Diversified International Fund. (Compl. ¶¶ 61-62)

Reso's allegations regarding fees charged to these other clients of APLP fail to support a claim for excessive fees. The ICA "does not necessarily ensure fee parity between mutual funds and institutional clients . . . ." *Jones*, 130 S. Ct. at 1429. As the District Court put it in *Jones*, "Section 36(b) does not create a duty that advisers receive the lowest possible fee amount for the services they provide. . . . What matters is whether there is a fundamental disconnect between what the Funds paid and what the services were worth. . . ." *Jones v. Harris Assocs., L.P.*, 2007

- 17 -

WL 627640 at *9 (N.D. Ill. Feb. 27, 2007), *aff'd on other grounds*, 527 F.3d 627, *vacated by* 130 S. Ct. 1418.[12]  In this regard, the Supreme Court has cautioned that:

> [T]here may be significant differences between the services provided by an investment adviser to a mutual fund and those it provides to a pension fund which are attributable to the greater frequency of shareholder redemptions in a mutual fund, the higher turnover of mutual fund assets, the more burdensome regulatory and legal obligations, and higher marketing costs.

*Jones*, 130 S. Ct. at 1428-29 (internal citations omitted).  If the services rendered to fund and other clients are significantly different, "then courts must reject such a comparison."  *Id*. at 1429.  Further, even if a "large disparity" in fees exists "that cannot be explained by the different services," no claim exists unless there also is "other evidence that the fee is outside the arm's-length range . . . ."  *Id*. at 1429 n.8.

Here, Reso's allegations comparing the services rendered to the Funds and to APLP's other clients consist entirely of conclusions (even then, some alleged on information and belief) unsupported by facts.  (*See* Compl. ¶¶ 55 ("[u]pon information and belief," services are "substantially similar, if not identical"), 57 ("upon information and belief," differences in fees are not "justif[ied] by differences in services"))  Reso's allegations do not even address the differences noted in *Jones* between the services provided to mutual fund and other clients, such as the more burdensome regulatory requirements, greater frequency of redemptions, and higher turnover in assets which characterize mutual funds.  *See Jones*, 130 S. Ct. at 1428-29; *see also In re Evergreen Mutual Fund Fee Litig.*, 240 F.R.D 115, 122 (S.D.N.Y. 2007) (leave to amend

---

[12]  In this case there can be no serious contention of a "fundamental disconnect" between "what the Funds paid and what the services were worth."  As the SAI cited in paragraph 57 of the Complaint indicates, Artisan International Fund and Artisan International Value Fund issue one class of shares designated "Investor Shares" (the shares purchased by Mr. Reso) and another class of shares designated "Institutional Shares," which are "designed for certain employee benefit plans as well as institutional and other investors with a minimum initial investment of $1 million."  Investors who invest in Institutional Shares pay the same advisory fee, for the same advisory services rendered by APLP, as investors (like Mr. Reso) who invest in the class of Investor Shares issued by those same Funds.  (App. Exhibit E at 22)  The sophisticated investors who invest in Institutional Shares obviously deem the services provided by APLP "worth" the advisory fee paid.

complaint denied as futile where comparisons of mutual fund fees to "fees charged through special programs and predominantly to retirement plans, financial services firms, and other institutional investors" were "not necessarily informative when assessing whether fees are disproportionate to the services rendered") (internal citations omitted). The Complaint likewise ignores the differences between the spectrum of services performed by an investment adviser to a mutual fund (such as those performed by APLP on behalf of Artisan International Fund, Artisan International Value Fund, and Artisan Mid Cap Value Fund) and the far more limited advisory services performed as a sub-adviser to another fund adviser, which must then itself perform, or contract for the performance of, all the other services necessary to the operation of mutual funds. Moreover, Reso's allegations regarding fees charged to CalPERS five or more years ago[13] are irrelevant to the issue of whether APLP's fees were excessive during the one-year statutory limitation period contained in Section 36(b)(3). *See In re Franklin*, 478 F. Supp. 2d at 686 (dismissing Section 36(b) claim; "[p]laintiffs must plead facts showing that those violations occurred during the statutory one-year period under Section 36(b)(3)"); *Boyce v. AIM Mgmt. Group, Inc*., No. 04-cv-02587, 2007 WL 7117575 at *5-7 (S.D. Tex. Sept. 17, 2007) (granting motion to dismiss on the ground that plaintiff failed to allege facts relevant to the one year "look back" period for a Section 36(b) claim).

### ii. Fees Charged To Other Funds By Other Advisers

Reso compares the advisory fee, other expenses, and total expense ratio of Artisan International Fund to those of Vanguard International Value Fund; of Artisan International Value Fund to those of Vanguard International Explorer Fund; and of Artisan Mid Cap Value Fund to

---

[13] Reso's allegations concerning the fees charged to CalPERS do not comport with information contained in that entity's publicly available annual reports, on which Reso's allegations presumably are based. Reso alleges that the advisory fee paid by CalPERS ranged from 0.06% to 0.10% during 2001 to 2006. (*See* Compl. ¶ 61(a)) The CalPERS annual report for the fiscal year ended June 30, 2002 (publicly available at http://www.calpers.ca.gov/eip-docs/about/pubs/member/calpers-reports/comprehensive-annual-financial/comprehensive-annual-fina-rept-02.pdf) indicates at page 67 that APLP earned total management and performance fees of $7.291 million managing reported net assets of $608.738 million, which equates to an advisory fee of *1.20%* of net assets, well in excess of the 0.93% to 0.95% advisory fees paid by the Funds. (Compl. ¶ 66) (*See* App. Exhibit J at 67)

those of Vanguard Selected Value Fund.  (Compl. ¶¶ 66-68)  The comparisons drawn by Reso here are inapt for a number of reasons, even putting aside the limited value of such comparisons generally.  *See Amron*, 464 F.3d at 345 (*citing Gartenberg*, 694 F.2d at 929 (comparisons of fees charged by different advisers are of "limited value in assessing whether the fees charged by any given fund are excessive")).

First, Reso compares each Fund to a single Vanguard fund.  Such a narrow comparison sheds no light on whether the fees at issue here are excessive.  *In re Scudder Mut. Funds Fee Litig.*, No. 04-cv-1921, 2007 WL 2325862, at *17 (S.D.N.Y. Aug. 14, 2007) (dismissing a Section 36(b) claim where plaintiffs "neglect[ed] to compare" the subject funds "to more than four – and, in four of the six sets of comparisons, no more than two – other funds").

Second, "[t]hat a mutual fund has an expense ratio higher than Vanguard, a firm known for its emphasis on keeping costs low, raises little suspicion under this [*Gartenberg*] factor." *Amron*, 464 F.3d at 345 (affirming dismissal of Section 36(b) claim); s*ee also Gartenberg*, 694 F.2d at 928 (observing that the Senate Report on the bill that became Section 36(b) indicates that "a 'cost-plus' type of [investment advisory] contract is not required").

Third, Reso's assertions that the services provided to each of the Vanguard funds he has selected are comparable to the services provided by APLP are conclusory and not supported by allegations of fact.  (*See* Compl. ¶¶ 64 ("on information and belief," the services are "the same or substantially similar"); 67 ("to the extent" there are differences in services, they are "de minimis or do not entail significant costs to APLP")).  Such facts are necessary to make any comparison of fees charged by different funds meaningful.  *Migdal*, 248 F.3d at 327 (affirming dismissal of Section 36(b) claim; "plaintiffs' comparison between the two underlying funds and three other mutual funds is not particularly meaningful precisely because it does not address the particular services offered by the defendants"); *Hoffman*, 591 F. Supp. 2d at 540 (dismissing Section 36(b) claim; finding that plaintiff failed to adequately allege comparative fee structures where the complaint made "no allegations about the comparative performance or services" of the subject fund).

Reso also alleges no facts from which the Court could reasonably infer that any of his chosen Vanguard Funds are sufficiently comparable to its alleged Artisan Fund counterpart. Indeed, the Complaint admits that Artisan International Fund and Artisan International Value Fund do not even fall within the same Morningstar category as the respective Vanguard fund to which each is compared. (Compl. ¶ 66) According to the Complaint, Artisan International Fund falls within the Morningstar Foreign Large Blend category, while the supposedly comparable Vanguard International Value Fund falls within the Morningstar Foreign Large Value category. (Compl. ¶ 66) Also according to the Complaint, Artisan International Value Fund falls within the Morningstar Foreign Small/Mid Value category, while the supposedly comparable Vanguard International Explorer Fund falls within the Morningstar Foreign Small/Mid Growth category. (Compl. ¶ 66) The Complaint does not explain why these funds are nonetheless purportedly comparable notwithstanding their different Morningstar classifications.

> d. *Whether Economies Of Scale Exist And Are Appropriately Shared*

Economies of scale may arise when the per-unit production costs of a product decline as a result of increased output. *Hoffman*, 591 F. Supp. 2d at 539 n.32. Reso's attempt to plead a failure to share economies of scale is based largely on generic allegations about the mutual fund industry as a whole and theories about the existence of economies of scale. (*See* Compl. ¶¶ 69-74) For the reasons discussed in Section III. B. 2. of this Memorandum, these generic, one-size-fits-all allegations should be disregarded. *See also Salomon*, 528 F. Supp. 2d at 339 (dismissing Section 36(b) claim and holding economies of scale were not alleged sufficiently where "[a]side from non-Fund-specific, economic analysis regarding theoretical economies of scale, the [complaint] contain[ed] no allegations as to Defendants' costs in managing the Funds.").

The allegations in Reso's Complaint, such as they are, that are directed to the Funds boil down to the following: (i) as the Funds have grown, so have fees paid by each Fund, notwithstanding supposed economies of scale that have been "realized" via undefined means;[14]

---

[14] Reso neglects to inform the Court that Artisan International Value Fund and Artisan Mid Cap Value Fund are both closed to most new investors. (Amended S-1, App. Exhibit D at 4, 23) The commentary to Morningstar's Stewardship Grade for these Funds observes that by closing funds,

(ii) no "meaningful" savings have been shared with the funds; (iii) Clearwater International Fund, a mutual fund to which APLP provides sub-advisory services, negotiated a fee schedule with breakpoints that are different from those of the Funds; and (iv) Artisan International Fund assertedly has "slight" breakpoints. (Compl. ¶¶ 75-77)

In order to allege economies of scale, however, a plaintiff must "make a substantive allegation regarding the actual transaction costs at issue and whether the costs per investor increased or decreased as the assets under management grew." *Hoffman*, 591 F. Supp. 2d at 540 (affirming dismissal of Section 36(b) claim; economies of scale not alleged). Reso makes no such allegations. As a result, the Court is left unable to determine "whether any economy of scale even existed." *Id.*; *see also Amron*, 464 F.3d at 344 (economies of scale not alleged where plaintiff made "no allegations regarding the costs of performing fund transactions or the relationship between such costs and the number of transactions performed") (internal citations omitted); *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 411 (2d Cir. 1989) (same); *Evergreen*, 240 F.R.D. at 121 (same); *see also Salomon*, 528 F. Supp. 2d at 336-39 ("[p]laintiffs cannot meet their burden simply by pointing to the size of the funds and their rates of growth"); *Scudder*, 2007 WL 2325862, at *16-17 (dismissing Section 36(b) claim and concluding that amendment would be futile where, among other things, plaintiff's allegations merely presumed that economies of scale were achieved but did not explain how, and plaintiff failed to specify how economies of scale were not passed on to investors).

Reso's allegations with respect to the sub-advisory services provided by APLP to Clearwater International Fund are flawed for an additional, independent reason. Reso alleges no facts sufficient to permit anything more than speculation as to whether the services provided to the Funds are comparable to those provided to Clearwater International Fund, such that similar economies of scale could be achieved. *See Jones*, 130 S. Ct. at 1428-29. Lacking such facts,

---

APLP has demonstrated "that investment merit and good stewardship have trumped marketing and asset gathering concerns at the firm," and that "its partners have been responsible stewards of shareholders' capital." (App. Exhibit F at 1-2; App. Exhibit G at 1-2; App. Exhibit H at 1-2)

there is no basis on which a comparison of the fee structures applicable to the two disparate clients could be made. *Id*.; s*ee also Hoffman*, 591 F. Supp. 2d at 540 (holding "the differential in breakpoints between sub-advisors and investment advisors is irrelevant to the issue of economies of scale" in that "investment advisors and sub-advisors perform distinct services" which "justify the different breakpoint arrangements").

Finally, the Complaint itself makes clear that each Fund *does* in fact have breakpoints. (Compl. ¶ 33) Therefore, economies of scale *are* being shared with the Funds, even assuming incorrectly (as Reso apparently does) that breakpoints are the only means by which economies of scale may be shared with investors. (As appears from the "SEC Report" cited in paragraph 72 of the Complaint, many of the largest mutual funds do not employ *any* breakpoints. *See* SEC Division of Investment Management, Report on Mutual Fund Fees and Expenses, Dec. 2000, (publicly available at http://www.sec.gov/news/studies/feestudy.htm), App. Exhibit K at 32 (19 of the 100 largest mutual funds had "single fee contracts [that] do not employ breakpoints" of any kind))

### e. Costs And Profitability Of Providing Investment Management Services

Reso devotes only four paragraphs of his Complaint to the costs and alleged profitability of the services APLP provides to the Funds. (Compl. ¶¶ 79-82) In sum, he alleges (again, "on information and belief") that APLP's financial reporting "is intended to, and does, obfuscate [APLP's] true profitability" (*Id*. ¶ 79); that APLP's incremental costs are "believed to be nominal," while its fees are "unreasonable and excessive" (*Id*. ¶ 80); and, "[o]n information and belief," that a yet-to-be performed "review" of APLP's "full costs of providing management services" assertedly will demonstrate the "enormous profitability" to APLP of providing advisory services to the Funds. (*Id.*)

It is evident that each of these allegations is nothing more than wholesale speculation. And neither Reso's allegations concerning the amount of *revenue* derived by APLP from the services performed on behalf of all Artisan Funds as opposed to other clients, nor the fee rates

charged for the different services performed on behalf of these different clients, support his conclusions as to the profitability of those services. In the absence of factual allegations concerning APLP's *costs* of providing services to the Funds, there is no way to determine the *profitability* to APLP of providing those services. *Amron*, 464 F.3d at 344 (affirming dismissal of Section 36(b) claim; allegations regarding fees "are irrelevant to a showing of profitability without some allegation of the corresponding costs incurred in operating the funds"); *Salomon*, 528 F. Supp. 2d at 338 (dismissing Section 36(b) claim where, *inter alia*, plaintiff alleged profitability without allegation regarding the corresponding costs incurred by the fund and failed to include allegations regarding the relationship of the growth of the fund and costs of performing fund transactions in support of economies of scale argument). Reso's allegations thus fail to support a claim under Section 36(b).

Other facts will come, according to Reso, "[f]ollowing discovery of this information." (Compl. ¶ 80) This wishful approach to pleading was insufficient even under the more liberal regime existing before *Iqbal* and *Twombly*. *See Migdal*, 248 F.3d at 328 (affirming dismissal of a Section 36(b) Complaint; "[w]hile Rule 8 is a liberal standard, plaintiffs cannot simply promise the court that once they have completed discovery, something will turn up"). It is all the more inadequate today, under the more stringent standards now applicable to federal court pleadings. Discovery is not intended to be used as a tool to marshal facts sufficient to state a plausible claim. *Bissessur*, 581 F.3d at 602 ("a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case").

## IV. CONCLUSION

The allegations in the Complaint do not allege a plausible claim under Section 36(b) of the ICA. Reso's broad criticisms of the mutual fund industry do not supply the facts necessary to establish that APLP has breach its fiduciary duty as to any of the Funds. Reso alleges almost no facts specific to any of the Funds at issue, and the few allegations that do pertain to one or more of the Funds are plainly insufficient to allege a claim under Section 36(b). Artisan Partners

Limited Partnership respectfully requests that the Court grant its Motion and dismiss the Complaint.

Dated:   October 7, 2011

Respectfully submitted,

ARTISAN PARTNERS LIMITED
PARTNERSHIP

By:   /s/ John W. Rotunno
John W. Rotunno (SBN IL/02405342)
john.rotunno@klgates.com
Paul J. Walsen (SBN IL/6226318)
paul.walsen@klgates.com
Joseph C. Wylie II (SBN IL/6270852)
joseph.wylie@klgates.com
Molly K. McGinley (SBN IL/6285809)
molly.mcginley@klgates.com
K&L GATES LLP
70 West Madison Street
Suite 3100
Chicago, IL 60602
Telephone: 312.807.4244
Facsimile: 312.827.1278

Daniel E. Conley (SBN/1009443)
daniel.conley@quarles.com
Joseph O. Wilson (SBN/1052468)
joe.wilson@quarles.com
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone: 414.277.5609
Facsimile: 414.978.8609

***Attorneys for Defendant Artisan Partners
Limited Partnership***