# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

EDWIN L. RESO, for the use and benefit of )
THE ARTISAN INTERNATIONAL FUND, )
THE ARTISAN INTERNATIONAL VALUE )
FUND and THE ARTISAN MID CAP )
VALUE FUND, )
                                                  )
                       Plaintiff, )                Case No. 2:11-cv-00873-JPS
                                                  )
         vs. )
                                                  )
ARTISAN PARTNERS LIMITED )
PARTNERSHIP, )
                                                  )
                       Defendant. )

## REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION TO DISMISS

John W. Rotunno (SBN IL/02405342)
john.rotunno@klgates.com
Paul J. Walsen (SBN IL/6226318)
paul.walsen@klgates.com
Joseph C. Wylie II (SBN IL/6270852)
joseph.wylie@klgates.com
Molly K. McGinley (SBN IL/6285809)
molly.mcginley@klgates.com
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Telephone: 312.807.4244
Facsimile: 312.827.1278

Daniel E. Conley (SBN/1009443)
daniel.conley@quarles.com
Joseph O. Wilson (SBN/1052468)
joe.wilson@quarles.com
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone: 414.277.5609
Facsimile: 414.978.8609

*Attorneys for Defendant Artisan Partners Limited Partnership*

## TABLE OF CONTENTS

Page(s)

I. RESO'S PURPORTEDLY "SPECIFIC" ALLEGATIONS PLEADED ON "INFORMATION AND BELIEF" AND ALLEGATIONS COPIED FROM OTHER COMPLAINTS AGAINST UNRELATED ADVISERS SHOULD BE DISREGARDED ........................................................................................................1

II. RESO HAS FAILED TO STATE A PLAUSIBLE CLAIM ...............................................4

    A. The Independence, Care And Conscientiousness Of The Funds' Disinterested Directors..................................................................................................4

    B. The Nature And Quality Of The Services Provided By APLP...............................6

    C. Comparative Fee Structures....................................................................................9

        1. Fees Charged To Other Clients Of APLP...................................................10

        2. Fees Charged To Other Funds By Vanguard..............................................11

    D. Costs And Profitability Of Providing Investment Management Services .............13

    E. Whether Economies Of Scale Exist And Are Appropriately Shared ....................13

III. CONCLUSION................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2009) ................................................................................................ passim

*Bausch v. Stryker Corporation*,
 630 F.3d 546 (7th Cir. 2010) ................................................................................................ 2

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................... 1, 4, 7, 12

*Bissessur v. Ind. Univ. Bd. of Trs.*,
 581 F.3d 599 (7th Cir. 2009) .............................................................................................. 15

*Curran v. Principal Mgmt. Corp., LLC.*,
 No. 09-cv-433, 2010 WL 2889752 (S.D. Iowa June 8, 2010), *rev'd on other
 grounds on reconsideration*, 2011 WL 22872 (S.D. Iowa Jan. 24, 2011) .......................... 9

*Gallus v. Am. Express Fin. Corp.*,
 370 F. Supp. 2d 862 (D. Minn. 2005) .................................................................................. 4

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
 694 F.2d 923 (2d Cir. 1982) ......................................................................................... 4, 6, 9

*Henson v. CSC Credit Servs.*,
 29 F.3d 280 (7th Cir. 1994) .................................................................................................. 3

*Hoffman v. UBS-AG*,
 591 F. Supp. 2d 522 (S.D.N.Y. 2008) ........................................................................... 13, 14

*In re Federated Mut. Funds Excessive Fee Litig.*,
 No. 04-cv-352, 2009 WL 5821045 (W.D. Pa. Sept. 30, 2009) ............................................ 9

*Jones v. Harris Assocs., L.P.*,
 130 S. Ct. 1418 (2010) ...................................................................................... 4, 10, 11, 14

*Kalish v. Franklin Advisers, Inc.*,
 742 F. Supp. 1222 (S.D.N.Y. 1990) ................................................................................... 12

*McCauley v. City of Chicago*,
 No. 09–3561, 2011 WL 4975644 (7th Cir. Oct. 20, 2011) .................................................. 6

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
 248 F.3d 321 (4th Cir. 2001) ........................................................................................ 13, 14

*Sins v. Janus Capital Mgmt. LLC*,
 No. 04-1647, 2006 WL 3746130 (D. Colo. Dec. 15, 2006) ............................................ 4, 5

**Page(s)**

**Statutes**

15 U.S.C. § 80a-35 ............................................................................................................... passim

**Rules**

Fed. R. Civ. P. 9 ............................................................................................................................ 5

Defendant Artisan Partners Limited Partnership ("APLP") respectfully submits this Reply Memorandum in support of its motion to dismiss the Complaint in this action for failure to state a claim upon which relief can be granted under Section 36(b) of the Investment Company Act of 1940 (the "ICA"), as amended, 15 U.S.C. § 80a-35 (b) ("Section 36(b)").

I. **RESO'S PURPORTEDLY "SPECIFIC" ALLEGATIONS PLEADED ON "INFORMATION AND BELIEF" AND ALLEGATIONS COPIED FROM OTHER COMPLAINTS AGAINST UNRELATED ADVISERS SHOULD BE DISREGARDED**

Reso suggests – erroneously – that APLP's Motion departs from the pleading standards set forth in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-51 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and seeks to hold him to a supposedly "impossible pleading standard." (Opp. at 7, 12) To be clear, APLP does not contend that the Court should construe properly pleaded factual allegations against Reso, or that Reso is required to prove his claim at the pleading stage. APLP *does* contend, consistent with *Iqbal* and *Twombly*, that conclusions are not to be taken as true, that a complaint must plead more than the bare elements of a claim, and that a complaint must plead sufficient factual matter to state a claim for relief that is plausible on its face – not merely consistent with the *possibility* of liability. *Iqbal*, 129 S. Ct. at 1949. Reso appears to acknowledge these basic principles, but nevertheless asks the Court to accept as sufficient allegations which he *admits* are based solely on speculation.

Plaintiff's Opposition to APLP's motion ("Opp.") contains a "Statement of Relevant Facts" in which Reso purports to identify "numerous specific facts the Court must accept as true" that ostensibly support his Section 36(b) claim. (Opp. at 2) But most of the supposed "specific facts" upon which Reso's claim is based are alleged solely "on information and belief" and that phrase, as used in Reso's Complaint, means that Plaintiff has nothing more than a speculative

"belief" rather than any factual "information" specific to APLP or the three Artisan funds (the "Funds") APLP serves.

For example, with respect to the nature and quality of the services performed by APLP, the independence and conscientiousness of the Funds' Directors, economies of scale and profitability, Reso asks the Court to allow this case to proceed based on conclusory and speculative allegations *because Reso does not have access to information necessary to plead facts in support of those factors.* (*See*, *e.g.*, Opp. at 17 ("Defendant's insistence that Plaintiff allege facts regarding Defendant's costs in providing investment advisory services to the Funds is disingenuous because Defendant knows Plaintiff does not have access to this information"); 22 ("Plaintiff does not have access to Defendant's internal costs . . . which are necessary to calculate economies of scale"); 24 ("While Plaintiff agrees that it cannot calculate Defendant's exact (undisclosed) profitability, Defendant is wrong to suggest that Plaintiff should be required to do so given that Plaintiff does not have access to Defendant's internal costs"); 26 ("Plaintiff lacks information as to the technical status of the directors under the statute, just as Plaintiff lacks specific information about the fee-setting process, because that information is solely within the possession and control of Defendant"))

Allegations made on information and belief have their place where a plaintiff makes those allegations after an inquiry reasonable under the circumstances.[1] However, in Reso's

---

[1] For example, where a plaintiff injured by a medical device attempts to assert a claim based upon noncompliance with governing regulatory standards, the precise nature of the noncompliance may not be known to the plaintiff, but the manner and type of harm may allow the plaintiff to plead facts sufficient to assert the claim on information and belief. *See Bausch v. Stryker Corporation*, 630 F.3d 546, 560-61 (7th Cir. 2010). The circumstances of this case are very different. Indeed, as explained on pages 5-6 below, unlike the plaintiff in *Bausch*, Reso does have access to relevant publicly available information, but he ignores the information because it does not support his claim.

2

Complaint, the phrase "on information and belief" is code for pure speculation, as Plaintiff's concession that he lacks any "information" upon which to base those allegations indicates.

Moreover, many of the "facts" purportedly "specific" to the Artisan Funds and relied upon in Reso's Opposition actually are allegations copied (often virtually *verbatim*) from earlier complaints filed by Reso's counsel against *other, completely unrelated investment advisers* and involving different, completely unrelated mutual funds. The Comparison of Allegations, attached as Exhibit 1 to the Appendix to this Reply Memorandum, compares allegations in Reso's Complaint with allegations in other complaints filed by one or more of the law firms representing Reso in this action. The complaints include those filed in 6 of the 8 cases cited at page 27 of Reso's Opposition.[2] These recycled allegations include, among many others, Reso's allegations that APLP "employs inaccurate accounting practices in its financial reporting" (Compl. ¶ 79; Opp. at 7); that the services APLP performs on behalf of the Funds purportedly are essentially the same as those performed on behalf of APLP's other clients, and supposedly do not entail substantial additional costs to APLP (Compl. ¶¶ 55, 80; Opp. at 2, 3); that APLP supposedly does not provide the Directors with sufficient, complete, or accurate information to enable them to fulfill their duties (Compl. ¶ 45; Opp. at 7); and that APLP has "misappropriated" economies of scale it assertedly has experienced (Compl. ¶ 75; Opp. at 4, 22). These and similar allegations regurgitated from earlier complaints do not "plausibly" suggest anything "specific"

---

[2] It is noteworthy that although Plaintiff has submitted several complaints from other actions as attachments to his Request for Judicial Notice, and has correctly observed that a court may take judicial notice of publicly filed court documents (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)), he has elected not to submit to the Court any of the complaints in the eight cases cited at page 27 n.8 of his Opposition, 7 of which were written by one or more of Reso's law firms in this case. APLP has obtained copies of 6 of these complaints. Those complaints, and others filed by Reso's counsel, are set forth in the Appendix to this Reply Memorandum. A review of the Comparison of Allegations (Exhibit 1 to the Appendix to this Reply Memorandum) explains Reso's reluctance to submit the complaints (which he describes only as "similar" to his Complaint here) to the Court.

other than the mass-production of Section 36(b) litigation. The "troubl[ing]" appearance of "identical allegations in unrelated cases" filed by Reso's counsel moved one District Court (in a decision, predating *Twombly* and *Iqbal*, relied upon in Reso's Opposition) to "question whether reasonable inquiry underlies the allegations made 'on information and belief.'" *Sins v. Janus Capital Mgmt. LLC*, No. 04-1647, 2006 WL 3746130 at *2, *4 (D. Colo. Dec. 15, 2006).[3] All such allegations should be disregarded in ruling on the sufficiency of the Complaint.

## II.    RESO HAS FAILED TO STATE A PLAUSIBLE CLAIM

Reso acknowledges, as he must, that in order for liability to exist under *Jones v. Harris Assocs., L.P.*, 130 S. Ct. 1418, 1425-26 (2010), an advisory fee must be "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." (Opp. at 13) Thus, using the factors identified in *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir. 1982), Reso must allege facts sufficient to make a plausible case that the fees at issue meet this standard. What few allegations Reso has made that are directed to the Funds – even considering those pleaded upon information and belief, copied from other complaints, or both – do not begin to plead a plausible claim under *Jones* or *Gartenberg*.

### A.    *The Independence, Care And Conscientiousness Of The Funds' Disinterested Directors*

Reso argues that his allegations "on information and belief" concerning APLP's supposed conduct with respect to the Board, and the Board's decision-making processes, are

---

[3] APLP was unable as of the time of this filing to obtain a copy of the Consolidated Amended Complaint addressed in the *Sins* case. APLP was able to obtain a copy of the complaint at issue in *Gallus v. Am. Express Fin. Corp.*, 370 F. Supp. 2d 862 (D. Minn. 2005), one of the cases cited by Reso on page 27 n.8 of his Opposition. (*See* Exhibit 5 to the Appendix to this Reply Memorandum) The court in *Gallus*, "concern[ed] regarding the basis and veracity" of allegations made by Reso's counsel, limited "Plaintiffs' ability to engage in discovery" on a complaint that survived dismissal prior to *Twombly* and *Iqbal* "by only the narrowest of margins." *Gallus*, 370 F. Supp. 2d at 867.

sufficient to plausibly allege deficiencies in the independence, care and conscientiousness of the Disinterested Directors. Reso points to the allegations in Paragraphs 45-47 and 49 of his Complaint, which assert (on information and belief) that APLP "does not provide the directors with sufficient, complete and/or accurate information"; that the information provided by APLP about economies of scale is not "meaningful"; and that APLP has made "misleading representations" to the Board, which the Board ostensibly accepts without question. (Opp. at 7, 25)

Reso's Opposition makes clear, however, that these conclusory allegations, which essentially accuse APLP of fraudulent conduct in its dealings with the Board and therefore must meet the pleading standard imposed by Rule 9(b) of the Federal Rules of Civil Procedure,[4] are purely speculative. (Opp. at 25-26 ("Plaintiff lacks information as to the technical status of the directors under the statute, just as Plaintiff lacks specific information about the fee-setting process . . . .")) Thus, Reso accuses APLP of misleading the Funds' Board while, at the same time, acknowledging that he has no information to support this accusation.

In truth, relevant information regarding the Board and the "fee-setting process" *is* available to Reso or anyone else who cares to look in the public record. An extensive discussion of the qualifications of the Board appears at pages 24-25 of the Statement of Additional Information filed by Artisan Funds, Inc. with the Securities and Exchange Commission, a document cited in Paragraph 57 of the Complaint and included as Exhibit E in the Appendix filed contemporaneously with APLP's Renewed Motion (the "Appendix" or "App."). Detailed information about the Board's process and the information reviewed by the Board in considering

---

[4] In *Sins*, 2006 WL 3746130 at *2, the court refused to consider similar allegations about the defendant adviser's conduct because they sounded in fraud, but were not pleaded with specificity as required by Fed. R. Civ. P. 9(b).

the Advisory Agreements is available on pages 87-91 of the Form N-CSR for Artisan Funds, Inc. (filed publicly on June 3, 2011; relevant excerpts of which are attached as Exhibit A hereto).[5] Reso's contention that he lacks access to required information rings hollow in the face of this publicly available information. Such information exists and is freely available; it simply doesn't support Reso's vacant allegations.

B.  *The Nature And Quality Of The Services Provided By APLP*

Reso cites two allegations in support of his argument concerning this *Gartenberg* factor. First, Reso points to his allegation (on information and belief, of course) that services provided by APLP other than portfolio management supposedly are "de minimis and/or do not entail significant costs" to APLP. (Opp. at 15, *citing* Compl. ¶ 35) Second, Reso points to his allegation that the Artisan International Fund received a "Stewardship Grade" of "F" from Morningstar in the "fee" category. Neither allegation supports a plausible Section 36 (b) claim.

The first allegation is a mere conclusion. Absent supporting facts, such an allegation is not entitled to the presumption of truth. *McCauley v. City of Chicago*, No. 09–3561, 2011 WL 4975644, *4 (7th Cir. Oct. 20, 2011) (stating that "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth," citing *Iqbal*, 129 S. Ct. at 1940-41). Reso offers no such supporting facts, asserting on pages 15 and 20 of his Opposition that his allegation is supported by "academic literature," which as explained on page 8 of APLP's Opening Memorandum, was co-authored by an "expert" utilized in other litigation by Reso's attorneys. Because Reso does not allege that any such literature pertains specifically to APLP, his allegation that APLP's non-advisory services to the Funds are "de

---

[5]  Because the N-CSR is over 200 pages, Exhibit A includes only the title pages, table of contents and pages 87 through 91 of the N-CSR. The full N-CSR is publicly available at: http://www.sec.gov/Archives/edgar/data/935015/000119312511158339/dncsrs.htm#tx177730_18.

minimis" is pure speculation, and should be ignored. *Iqbal*, 129 S. Ct. at 1949 (in order to state a claim that is plausible on a face, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

With respect to the "F" given to Artisan International Fund in the fee component of Morningstar's Stewardship Grade, this allegation pertains to only *one component* of the overall grade assigned by Morningstar and even then signifies only that the expense ratio (not fees) of that Fund falls within the upper 40% of the funds Morningstar deems comparable. (App. Exhibit I at 2) As explained on page 16 of APLP's Opening Memorandum, absent allegations as to the particular services provided, Reso's allegation based on the fee component of the Morningstar Stewardship Grade for the International Fund is meaningless. Further, Reso tells the Court absolutely *nothing* about the grades received by the other Funds at issue in this case because those Funds received Stewardship Grades as of July 31, 2011 of "B" and "C," respectively, in the "fee" category, and an overall Morningstar Five-Star performance rating. (App. Exhibits G and H) Artisan International Fund received "A" grades as of July 31, 2011 for "regulatory issues" and "corporate culture," a "B" grade for "board quality" and an overall Stewardship grade of C, plus a Three-Star overall Morningstar performance rating. (App. Exhibit F)

Placement among the upper 40% of funds deemed comparable by Morningstar does not support, in any way, the conclusion that APLP's fees charged to Artisan International Fund were "so disproportionately large" as to violate Section 36(b). On their face, these facts "stop[ ] short of the line between possibility and plausibility of 'entitlement to relief,'" *Twombly*, 550 U.S. at 557. But beyond this, Morningstar offers another comparison that Reso has chosen to ignore: *each of the Funds had an overall expense ratio in 2007, 2008, 2009 and 2010 that was lower than the Morningstar category average*. Morningstar provides the following comparative

information on its publicly available website at http://financials.morningstar.com:[6]





Thus, the same Morningstar evaluation relied upon by Plaintiff supposedly to show that "there is no question that the fees, particularly for the Artisan International Fund, are high" (Opp. at 15), shows that the total expense ratios for the Funds all were *below the category average*. And, as to Artisan International Fund, placement in the upper 40th percentile but *below* the category average puts the expense ratio for this Fund somewhere in the middle of the pack, above the median but below the mean – certainly not a fact giving rise to a plausible inference that APLP's fees are "so disproportionately large" as to violate Section 36(b).

---

[6] *Available at* http://financials.morningstar.com/fund/expense.html?t=ARTIX&region= USA&culture=en-US; http://financials.morningstar.com/fund/expense.html?t=ARTKX&region= USA&culture=en-US and http://financials.morningstar.com/fund/expense.html?t=ARTQX (blue bars represent the Fund; orange bars represent category average; green bar represents fee level comparison group median).

8

Reso chides APLP for "failing to mention" the decision in *In re Federated Mut. Funds Excessive Fee Litig.*, No. 04-cv-352, 2009 WL 5821045 (W.D. Pa. Sept. 30, 2009), in which the Court denied a motion to dismiss and (according to Reso) "specifically cit[ed] the fund-at-issue's failing fee grade in doing so." (Opp. at 18) But what Reso fails to mention is the fact that the fund at issue in the *Federated* case received an *overall* Morningstar grade of F, had *no breakpoints*, and had "the *highest expense ratio of all the 266 large open-ended funds* evaluated by Morningstar. . . ." 2009 WL 5821045 at *6-7 (emphasis supplied). Reso has not made (and cannot make) any such allegations with respect to any of the Funds at issue here. The other case featured by Reso, *Curran v. Principal Mgmt. Corp., LLC.*, No. 09-cv-433, 2010 WL 2889752 (S.D. Iowa June 8, 2010), *rev'd on other grounds on reconsideration*, 2011 WL 22872 (S.D. Iowa Jan. 24, 2011), also is distinguishable on its facts. In *Curran*, the plaintiffs sued on behalf of "funds of funds," that is, funds that exclusively hold shares of other mutual funds, all of which received investment advisory services from the same adviser. 2010 WL 2889752 at *1. Because of the "fund of funds" structure of the funds at issue, the plaintiffs were able to allege in detail "four layers of fees" that were paid to the same adviser for the management of the funds. *Id*. at *8. The layered fee-upon-fee nature of the advisory fees at issue in *Curran* was central to the Court's denial of the motion to dismiss in that case. *Id*. Reso does not and cannot allege similar facts with respect to the Funds at issue here.

    C.    *Comparative Fee Structures*

Reso opens his discussion of this *Gartenberg* factor with a "heads I win, tails you lose" argument, contending that lower fees relative to other funds are of "little evidentiary value," but higher relative fees are significant. (Opp. at 18) In this case, however, Reso has failed to plead facts necessary to plausibly or meaningfully allege the fee comparisons he attempts to draw.

9

### 1. Fees Charged To Other Clients Of APLP

Reso alleges that APLP charges more to the Funds than it does to certain other clients, specifically as adviser to CalPERS, and as sub-adviser to Clearwater Investment Trust and Wells Fargo Advantage Diversified International Fund. Missing from the Complaint, however, are any factual allegations satisfying the requirement in *Jones* that the services rendered to other clients must be substantially similar to provide a meaningful comparison. 130 S. Ct. at 1428-29. The conclusory allegation in Paragraph 35 of the Complaint, repeatedly relied upon in Reso's Opposition, that the extensive additional services APLP performs on behalf of the Funds purportedly "are *de minimis,* entailing no significant costs to Defendant" certainly cannot satisfy this requirement, since it is pleaded on information and belief supported, as noted above, only by an article co-authored by one of the "experts" used previously by Reso's counsel. In other words, this allegation, like so many other allegations in the Complaint, is based on unadulterated speculation.[7]

Furthermore, a review of the allegations cited by Reso in his Opposition (*e.g.*, Complaint ¶¶ 35, 55, 57-58, 61) for the proposition that the services performed by APLP on behalf of the Funds and APLP's other clients are substantially similar reveals that those allegations are entirely conclusory. (*See* Compl. ¶¶ 35 ("[t]o the extent Defendant provides services other than portfolio management services . . . such services are, on information and belief, de minimis and/or do not entail significant costs to Defendant"); 55 ("[u]pon information and belief," services are "substantially similar, if not identical"); 57 ("upon information and belief,"

---

[7] Reso asks the Court to disregard the admonition in *Jones* that if the services rendered to fund and other clients are significantly different, "then courts must reject such a comparison." 130 S. Ct. at 1429. Reso notes that *Jones* was before the Supreme Court on appeal from the granting of summary judgment in favor of the advisor, not from dismissal of the Complaint. While this is true, it does not render the Supreme Court's legal rulings in *Jones* as to Section 36(b) liability any less valid, nor does it relieve Reso from the burden to plead a plausible claim under the law as set forth in *Jones*.

differences in fees are not "justif[ied]" by differences in services); 58 ("[a]lthough the investment advisory services provided to the Funds are virtually identical to services provided to Defendant's other accounts, and therefore are directly comparable, the fees charged to the Funds are materially higher than the fees charged to other accounts")) Reso has not pleaded any non-conclusory facts necessary to make a meaningful comparison between the fees paid by the Funds and the fees paid by other clients like CalPERS,[8] Clearwater Investment Trust and Wells Fargo Advantage Diversified International Fund, such as the "differences between the services provided" by APLP to those disparate clients. *Jones*, 130 S. Ct. at 1428-29.

### 2. Fees Charged To Other Funds By Vanguard

Reso also relies upon the Complaint's comparison of the fees charged by APLP to the Funds with fees charged by certain Vanguard funds selected by Plaintiff as a benchmark and (as to Artisan International Fund alone), with other funds in the categories used by Morningstar in its Stewardship Grading system. Thus, Reso argues that "all of the Funds have much higher investment advisory fees than similarly sized, actively managed Vanguard funds that receive comparable services." (Opp. at 3)

It should not be surprising that the three Vanguard funds chosen by Plaintiff for comparative purposes, which Reso contends "represent market-based rates" (Opp. at 4), have lower expense ratios. The funds selected by Plaintiff have unusually low fees, well below any

---

[8] Reso concedes that the total fee paid by CalPERS for the fiscal year ended June 30, 2002 was 1.20% of net assets, notwithstanding his misleading allegation in paragraph 66 of his Complaint that the advisory fee paid by CalPERS ranged from 0.06% to 0.10% during 2001 to 2006. (Opp. at 19 n.6) Reso argues that the fee paid by CalPERS for its 2002 fiscal year "was an anomaly" because CalPERS was required to pay a substantial "performance fee" during that year. (*Id.*) The fact that the agreement between CalPERS and APLP incorporated a performance fee component renders the fees paid by CalPERS pursuant to that agreement wholly unsuitable for comparison with the fees paid by the Funds pursuant to the Advisory Agreements, which are not alleged to have included, and did not include, a performance fee component. (App. Exhibits A-C)

11

industry mean or median. For each fund with a Morningstar "A" in the fee category, like the Vanguard funds identified by the Plaintiff, there are *four* funds that either received a B (second 20%), a C (third 20%), or an F (the highest 40% in expense ratio).[9] (App. Exhibit I at 2) Ultimately, Reso is alleging nothing more than that the expense ratio for the three Funds is not in the lowest 20%.

The pleading standards of *Iqbal* and *Twombly*, as applied to Section 36(b) cases, demand more than allegations that there exist funds with lower expense ratios. If such allegations were sufficient, most of the mutual fund industry would be exposed to the enormous cost and distraction of Section 36(b) litigation provided only that a shareholder willing to serve as a plaintiff can be found. Rule 8, however, does not "unlock the doors of discovery" to plaintiffs like Reso who are "armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950. To the extent that Reso is armed with anything more than conclusions, it is comparative expense data that fails to cross the *Twombly* threshold separating the "plausible" from the merely "possible."

Reso does not respond to the authorities cited by APLP on page 20 of its Opening Memorandum holding that comparisons to only a few other funds of any kind, or to Vanguard funds specifically, are of little value. *See also Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1230-31 (S.D.N.Y. 1990) (rejecting a comparison of a Franklin fund to an actively managed Vanguard fund: "In the world of mutual funds, Vanguard funds are truly unique"). Nor has Reso responded[10] to APLP's observation that he has failed to allege facts supporting his

---

[9]  Morningstar's grading system does not provide for "D" grades for fees. (*See* App. at Exhibit I at 2 (explaining that there are only four possible scores for fees, which correspond to the grades "A," "B," "C," and "F"))

[10]  Reso also offered no response to the Seventh Circuit authority cited on page 8 n.7 of APLP's Opening Memorandum which holds that he is not entitled to a jury trial in this case.

conclusory allegations that the services provided to each of the Vanguard funds he has selected are comparable to the services provided by APLP on behalf of the Funds. As the Fourth Circuit stated in *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir. 2001), a case cited by Reso, such facts are necessary to make any comparison of fees charged by different funds meaningful. *See also Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 540 (S.D.N.Y. 2008) (dismissing Section 36(b) claim; finding that plaintiff failed to adequately allege comparative fee structures where the complaint made "no allegations about the comparative performance or services" of the subject fund).

        D.      *Costs And Profitability Of Providing Investment Management Services*

As explained on pages 23-24 of APLP's Opening Memorandum, Reso's allegations about the profitability of the services APLP provides to the Funds are wholly speculative and conclusory. Reso acknowledges that other than speculation (*i.e.*, the conclusions Reso alleges on "information and belief"), he has no facts about APLP's *costs* of providing services to the Funds. (Opp. at 24) As the authorities cited on page 24 of APLP's Opening Memorandum show, Reso's lack of such facts leaves him unable to properly allege the profitability to APLP of providing those services. Reso's allegations thus fail to support a claim under Section 36(b).

        E.      *Whether Economies Of Scale Exist And Are Appropriately Shared*

Reso asserts that he should be relieved of his obligation under *Hoffman*, 591 F. Supp. 2d at 540, to "make a substantive allegation regarding the actual transaction costs at issue and whether the costs per investor increased or decreased as the assets under management grew," because he does not have access to the necessary information. However, as indicated in *Hoffman* and in the other cases cited on page 22 of APLP's Opening Memorandum, courts regularly dismiss Section 36(b) claims lacking this information because without it a court cannot determine "whether any economy of scale even existed." *Id*.

13

Reso points to the fee schedule for Clearwater International Fund (Opp. at 22-23), but he has failed to allege facts sufficient to permit anything more than speculation as to whether the services provided to the Funds are comparable to those provided to Clearwater International Fund (a sub-advisory client), such that similar economies of scale could be achieved. *See Jones*, 130 S. Ct. at 1428-29. Reso provides no factual basis upon which a comparison of the fee structures applicable to the two disparate clients can be made. *Id.*; s*ee also Hoffman*, 591 F. Supp. 2d at 540 (holding that "the differential in breakpoints between sub-advisors and investment advisors is irrelevant to the issue of economies of scale" in that "investment advisers and sub-advisors perform distinct services" which "justify the different breakpoint arrangements"). He argues based on the conclusory allegations in paragraph 57 of the Complaint that the *investment subadvisory advisory services* provided to Clearwater International Fund are the same as *investment advisory* services provided to the Funds (Opp. at 23), but Reso says nothing about the *non-advisory* services provided by APLP to the Funds which it does *not* provide to Clearwater International Fund.

### III. CONCLUSION

For the reasons set forth above and in the Opening Memorandum in Support of APLP's Renewed Motion to Dismiss, Reso has failed to allege a plausible claim under Section 36(b). Reso argues that he should not be required to plead facts required in order to state a plausible claim because he purportedly lacks access to necessary information. However, a plaintiff's inability to marshal facts sufficient to allege a plausible claim is grounds for dismissal; it is not a proper basis to allow a defective complaint to survive in the hope that discovery might enable the plaintiff to fill gaps in his case that his pre-filing investigation (if any) left unfilled. *Migdal*, 248 F.3d at 328 (dismissing a Section 36(b) claim: "[w]hile Rule 8 is a liberal standard, plaintiffs

14

Case 2:11-cv-00873-JPS   Filed 10/28/11   Page 18 of 20   Document 74

cannot simply promise the court that once they have completed discovery, something will turn up"); *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 604 (7th Cir. 2009) (affirming dismissal of complaint: "[a]llowing this case to proceed absent factual allegations that match the bare bones recitation of the claims' elements would sanction a fishing expedition costing both parties, and the court, valuable time and resources").

Reso has acknowledged that he lacks facts sufficient to plead his claim. Accordingly, there is no point in granting Reso leave to attempt to replead in an effort to correct the deficiencies in his Complaint. APLP respectfully submits that the Complaint should be dismissed with prejudice.

Dated:   October 28, 2011                    Respectfully submitted,

                                             ARTISAN PARTNERS LIMITED
                                             PARTNERSHIP

                                       By:   /s/ John W. Rotunno
                                             John W. Rotunno (SBN IL/02405342)
                                             john.rotunno@klgates.com
                                             Paul J. Walsen (SBN IL/6226318)
                                             paul.walsen@klgates.com
                                             Joseph C. Wylie II (SBN IL/6270852)
                                             joseph.wylie@klgates.com
                                             Molly K. McGinley (SBN IL/6285809)
                                             molly.mcginley@klgates.com
                                             K&L GATES LLP
                                             70 West Madison Street
                                             Suite 3100
                                             Chicago, IL 60602
                                             Telephone: 312.807.4244
                                             Facsimile: 312.827.1278

                                             Daniel E. Conley (SBN/1009443)
                                             daniel.conley@quarles.com
                                             Joseph O. Wilson (SBN/1052468)
                                             joe.wilson@quarles.com
                                             QUARLES & BRADY LLP
                                             411 East Wisconsin Avenue
                                             Milwaukee, Wisconsin 53202
                                             Telephone: 414.277.5609
                                             Facsimile: 414.978.8609

                                             ***Attorneys for Defendant Artisan Partners
                                             Limited Partnership***