# EXHIBIT A

N-CSRS 1 dncsrs.htm ARTISAN FUNDS, INC.

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# FORM N-CSR

## CERTIFIED SHAREHOLDER REPORT OF REGISTERED
## MANAGEMENT INVESTMENT COMPANIES

Investment Company Act file number 811-08932

# Artisan Funds, Inc.
**(Exact name of registrant as specified in charter)**

**875 East Wisconsin Avenue, Suite 800**
**Milwaukee, WI 53202**
**(Address of principal executive offices) (Zip Code)**

| | |
|---|---|
| **Sarah A. Johnson** | **Alyssa Albertelli** |
| **Artisan Funds, Inc.** | **Ropes & Gray LLP** |
| **875 East Wisconsin Avenue, Suite 800** | **One Metro Center** |
| **Milwaukee, Wisconsin 53202** | **700 12th Street, N.W., Suite 900** |
| | **Washington, D.C. 20005-3948** |

**(Name and address of agents for service)**

Registrant's telephone number, including area code: (414) 390-6100

Date of fiscal year end: 9/30

Date of reporting period: 3/31/11

Form N-CSR is to be used by management investment companies to file reports with the Commission not later than 10 days after the transmission to stockholders of any report that is required to be transmitted to stockholders under Rule 30e-1 under the Investment Company Act of 1940 (17 CFR 270.30e-1). The Commission may use the information provided on Form N-CSR in its regulatory, disclosure review, inspection, and policymaking roles.

A registrant is required to disclose the information specified by Form N-CSR, and the Commission will make this information public. A registrant is not required to respond to the collection of information contained in Form N-CSR unless the Form displays a currently valid Office of Management and Budget ("OMB") control number. Please direct comments concerning the accuracy of the information collection burden estimate and any suggestions for reducing the burden to Secretary, Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549. The OMB has reviewed this collection of information under the clearance requirements of 44 U.S.C. § 3507.

**Item 1.**      **Reports to Shareholders.**

# SEMIANNUAL
# REPORT
### March 31, 2011

**ARTISAN GLOBAL EQUITY FUND**

**ARTISAN GLOBAL VALUE FUND**

**ARTISAN GROWTH OPPORTUNITIES FUND** (formerly known as
Artisan Opportunistic Growth Fund)

**ARTISAN INTERNATIONAL FUND**

**ARTISAN INTERNATIONAL SMALL CAP FUND**

**ARTISAN INTERNATIONAL VALUE FUND**

**ARTISAN MID CAP FUND**

**ARTISAN MID CAP VALUE FUND**

**ARTISAN SMALL CAP FUND**

**ARTISAN SMALL CAP VALUE FUND**

**ARTISAN VALUE FUND** (formerly known as Artisan
Opportunistic Value Fund)



ARTISAN

**ARTISAN FUNDS
INVESTOR SHARES**

TABLE OF CONTENTS

**SCHEDULES OF INVESTMENTS**

2      Artisan Global Equity Fund
5      Artisan Global Value Fund
8      Artisan Growth Opportunities Fund
10     Artisan International Fund
13     Artisan International Small Cap Fund
16     Artisan International Value Fund
19     Artisan Mid Cap Fund
22     Artisan Mid Cap Value Fund
25     Artisan Small Cap Fund
28     Artisan Small Cap Value Fund
32     Artisan Value Fund

**34     STATEMENTS OF ASSETS AND LIABILITIES**

**40     STATEMENTS OF OPERATIONS**

**46     STATEMENTS OF CHANGES IN NET ASSETS**

**52     FINANCIAL HIGHLIGHTS**

**63     NOTES TO FINANCIAL STATEMENTS**

**84     SHAREHOLDER EXPENSE EXAMPLE**

**87     FACTORS CONSIDERED IN RENEWING THE FUNDS' ADVISORY AGREEMENTS**

**92     NOTES ON PORTFOLIO HOLDINGS' CLASSIFICATION**

**93     PROXY VOTING POLICIES AND PROCEDURES**

**93     INFORMATION ABOUT PORTFOLIO SECURITIES**

**ARTISAN FUNDS**
**P.O. BOX 8412**
**BOSTON, MA 02266-8412**

Effective July 1, 2011, Artisan Funds, Inc. will change its name to Artisan Partners Funds, Inc. but will continue to do business as Artisan Funds.

This report and the unaudited financial statements contained herein are provided for the general information of the shareholders of Artisan Funds. Before investing, investors should consider carefully each Fund's investment objective, risks and charges and expenses. For a prospectus, which contains that information and more information about each Fund, please call 800.344.1770 or visit our website at **www.artisanfunds.com**. Read it carefully before you invest or send money.

Artisan Funds offered through Artisan Distributors LLC, member FINRA.

## FACTORS CONSIDERED IN RENEWING THE FUNDS' ADVISORY AGREEMENTS

Artisan Partners Limited Partnership ("Artisan Partners") is responsible for management of the Funds' investment portfolios and for overall management of the Funds' business and affairs pursuant to investment advisory agreements dated May 10, 2006 (Emerging Markets Fund); August 9, 2007 (Global Value Fund); December 28, 1995, as amended November 17, 2005 (International Fund); November 7, 2001 (International Small Cap Fund); August 9, 2002 (International Value Fund); April 10, 1997 (Mid Cap Fund); January 25, 2001 (Mid Cap Value Fund); May 15, 2008 (Growth Opportunities Fund); February 9, 2006, as amended December 1, 2010 (Value Fund); March 27, 1995 (Small Cap Fund); and August 20, 1997 (Small Cap Value Fund) (each, an "Advisory Agreement" and together, the "Advisory Agreements"). The investment advisory and sub-advisory agreements for Global Equity Fund dated February 9, 2010 continue through November 30, 2011, and so were not considered at the meetings described below. Artisan Partners, a Delaware limited partnership, is managed by its general partner, Artisan Investments GP LLC, a Delaware limited liability company wholly-owned by Artisan Partners Holdings LP ("Artisan Partners Holdings"). Artisan Partners Holdings is a limited partnership organized under the laws of Delaware whose sole general partner is Artisan Investment Corporation, a Wisconsin corporation. Artisan Partners was founded in March 2009 and succeeded to the investment management business of Artisan Partners Holdings during 2009. Artisan Partners Holdings was founded in December 1994 and began providing investment management services in March 1995. The principal address of Artisan Partners is 875 E. Wisconsin Avenue, Suite 800, Milwaukee, Wisconsin 53202.

The Advisory Agreement for each Fund may be continued from year to year only so long as the continuance is approved annually (a) by the vote of a majority of the directors of Artisan Funds who are not "interested persons" of Artisan Funds or Artisan Partners cast in person at a meeting called for the purpose of voting on such approval, and (b) by the board of directors or by the vote of a majority (as defined in the 1940 Act) of the outstanding shares of the Fund. Each Advisory Agreement provides that Artisan Partners shall not be liable for any loss suffered by a Fund or its shareholders as a consequence of any act or omission in connection with investment advisory or portfolio services under the Advisory Agreement, except by reason of willful misfeasance, bad faith, or gross negligence on the part of Artisan Partners in the performance of its duties or from reckless disregard by Artisan Partners of its obligations and duties under the Advisory Agreement. Each Advisory Agreement will terminate automatically in the event of its assignment (as defined in the 1940 Act).

The directors of Artisan Funds held a special meeting of the board on October 28, 2010 (the "Special Meeting"), at which meeting they gave preliminary consideration to information bearing on the continuation of each Advisory Agreement for the period from December 1, 2010 through November 30, 2011. The primary purpose of the Special Meeting was to ensure that the directors had ample opportunity to consider matters they deemed relevant in considering the continuation of the Advisory Agreements, and to request any additional information they considered reasonably necessary to their deliberations, without undue time constraints. The directors were also presented with a related proposal to lower the investment advisory fee schedule applicable to Value Fund.

Prior to the Special Meeting, independent counsel to the independent directors sent to Artisan Partners a request for information to be provided to the directors in connection with their consideration of the continuation of the Advisory Agreements. Artisan Partners

87

## FACTORS CONSIDERED IN RENEWING THE FUNDS' ADVISORY AGREEMENTS

provided materials to the directors in response to that request, other information Artisan Partners believed was useful in evaluating the continuation of the Advisory Agreements and extensive reports prepared by Lipper Inc. ("Lipper"), an independent source of investment company data, relating to each Fund's performance and expenses compared to the performance and expenses of a relatively small peer group and a larger peer universe of funds determined by Lipper to be comparable. Artisan Partners also provided additional reports prepared by Lipper comparing certain of the Funds' performance and expenses to peer groups and peer universes with a different style classification that Artisan Partners believed was more appropriate for comparative purposes than the style classification originally selected by Lipper. In the case of Value Fund, Artisan Partners provided an additional report prepared by Lipper showing how the Fund would compare to its current peer group if the proposed lower advisory fee schedule had been in place. The directors also received and reviewed a memorandum from their independent counsel regarding the directors' responsibilities in evaluating the Funds' Advisory Agreements.

In evaluating the Advisory Agreements, the directors reviewed the available information and discussed with representatives of Artisan Partners each Fund's operations, the nature, extent and quality of the advisory and other services provided by Artisan Partners to the Funds, the overall expense ratios of each class of shares of the Funds, and economies of scale and other benefits derived by Artisan Partners from its relationship with the Funds. In addition to the third party reports by Lipper and the memorandum from independent counsel, the directors reviewed information provided prior to and presented at the Special Meeting concerning the following:

- Artisan Partners' personnel and methods, including: Artisan Partners' assessment of its ability to attract and retain capable research, advisory and administrative personnel through compensation programs and equity participation and Artisan Partners' assessment of recent hiring and retention experience; the compensation structure for Artisan Partners' personnel with primary responsibility for managing the Funds; the time and attention of Artisan Partners' investment personnel devoted to the Funds; Artisan Partners' research and decision-making processes, including methods adopted to ensure compliance with investment objectives, policies and restrictions of the portfolios of the Funds; the policies relating to the assignment of Artisan Partners' personnel to the various Funds' portfolios; the adequacy and sophistication of Artisan Partners' technology and systems with respect to investment and administrative matters; and the education, experience and number of Artisan Partners' advisory personnel;

- The terms of each Advisory Agreement, including: a list of services performed by Artisan Partners; how the services performed by Artisan Partners under each Advisory Agreement differ from: (a) the services performed by Artisan Partners under other advisory agreements with registered investment companies or other accounts, and (b) the services typically performed by an investment adviser for registered investment companies and other accounts; Artisan Partners' responsibility for making investment decisions and for observing investment objectives, policies, and restrictions; Artisan Partners' standard of care; and termination provisions;

- Each Fund's short- and long-term investment performance, including comparisons for various time periods with (a) other Artisan Partners client accounts managed in the same

88

---

## FACTORS CONSIDERED IN RENEWING THE FUNDS' ADVISORY AGREEMENTS

investment strategy, (b) other mutual funds having similar investment objectives, and (c) appropriate market indices;

- Litigation pending, threatened or settled involving Artisan Partners, and the results of any audits, investigations or examinations of the Securities and Exchange Commission (the "SEC");

- Information regarding fee arrangements, including: a comparison of the Funds' total expenses and total expense ratios with other mutual funds (taking into account factors bearing on comparability, such as size, account-level charges, and investment objective); the structure of the advisory fees, including the method of computing fees and the frequency of payment of fees; a comparison of the advisory fees charged by Artisan Partners to the Funds with the advisory fees charged by other advisory organizations for managing mutual funds and other accounts, especially funds and accounts having similar investment goals and providing similar service; voluntary or contractual advisory fee limitations or reductions and relationship of fees to any fee limitation; the possible cost savings by Artisan Partners, incentives to effect savings, and sharing of savings with the Funds; any economies of scale as reflected in the basic advisory fees and any sliding scale reflecting increased size; a comparison of the fees charged by Artisan Partners to the Funds with the fees charged by Artisan Partners for managing other accounts including other mutual funds to which Artisan Partners provides sub-advisory services, with similar investment goals, including an explanation of any material differences, as well as any differences attributable to variations in service levels; information regarding other expenses, including expenses incurred by each of: (a) Artisan Partners, as adviser and administrator, (b) Artisan Distributors LLC, as the principal underwriter and (c) the Funds; custodian, shareholder servicing and transfer agent fees; and information regarding payments to financial intermediaries;

- Potential "fall-out" benefits gained by Artisan Partners or its affiliates from its relationship with the Funds, in addition to the advisory fees, including receipt of research paid for with commissions and the benefits to Artisan Partners in attracting and retaining other clients; and the method of estimating other benefits;

- Brokerage and portfolio transactions, including: the standards and performance in seeking best execution, commissions paid, including commissions by purpose; allocation of brokerage for research and other services ("soft dollars"); Artisan Partners' practices in light of SEC guidance under Section 28(e) of the Securities Exchange Act of 1934; research purchased with Artisan Partners' cash; research available for purchase by cash; the execution of portfolio transactions through brokers who sell the Funds' shares and steps taken to comply with Rule 12b-1(h) under the 1940 Act; and portfolio turnover rates;

- Artisan Partners' financial condition and stability and financial arrangements between Artisan Partners and its parent organization;

- The profitability to Artisan Partners of its relationship with each Fund, including: unaudited schedules showing Artisan Partners' revenue, expenses and profits in providing services to the Funds on a Fund-by-Fund basis; the assumptions and allocation methodologies utilized for profitability analysis; Artisan Partners' profit margins; and comparisons with Artisan Partners' profit margins on other accounts managed by Artisan Partners; and

89

FACTORS CONSIDERED IN RENEWING THE FUNDS' ADVISORY AGREEMENTS

- Potential conflicts of interest between the Funds and Artisan Partners and circumstances and actions addressing or bearing on potential conflicts of interest, including: the type and number of other clients served by Artisan Partners; the basis of sharing personnel, services, research and advice among clients; the basis of decisions to buy or sell securities for the Funds and other clients where the same security might be bought or sold for a number of clients; the basis of allocating purchases and sales of the same security, including initial public offerings, among the Funds and other clients of Artisan Partners; the possible advantages, including economies of scale, and disadvantages in having an investment adviser that has other clients; Artisan Partners' investments on its own behalf and possible conflicts with the Funds; Artisan Partners' code of ethics; and Artisan Partners' proxy voting policies.

At the end of the Special Meeting, after discussion and consideration of the information presented, the independent directors met in executive session with their independent counsel to discuss the materials presented.

On November 8, 2010, the independent directors again met separately with their independent counsel to review and discuss relevant information regarding the continuation of the Advisory Agreements and the information presented and discussed at the Special Meeting. The directors concluded their annual Advisory Agreement review at a regularly scheduled meeting on November 9, 2010. At the November 9th meeting, the independent directors and their independent counsel reviewed with the full board the information discussed at the Special Meeting and the November 8th meeting. The directors then considered whether any further discussion or review was necessary, concluding that the Special Meeting and the information reviewed by the independent directors at the November 8th and 9th meetings provided a strong basis for considering the continuation of the Advisory Agreements (as amended in the case of Value Fund). The directors then reviewed and affirmed each of the following conclusions:

**The nature, extent, and quality of Artisan Partners' services.** The directors concluded that the nature and extent of Artisan Partners' services to the Funds was appropriate and consistent with, and in some cases more advantageous to the Funds than, the terms of the Advisory Agreements. The directors concluded that the quality of Artisan Partners' services has been consistently high, with no material deficiencies.

**The investment performance of each Fund.** The directors concluded that each of International Fund, International Small Cap Fund, International Value Fund, Mid Cap Fund, Mid Cap Value Fund, Value Fund, and Small Cap Value Fund had met its long-term performance standards by adhering to its investment strategy and outperforming its peers over long-term periods. The directors also concluded that each of Emerging Markets Fund, Global Value Fund, and Growth Opportunities Fund had adhered to its investment strategy and performed satisfactorily or better since inception periods. In addition, the directors concluded that, over the long-term, Small Cap Fund had adhered to its investment strategy and that performance was acceptable. Moreover, based on recent changes to the investment management team of Small Cap Fund, the directors concluded that prospects for the performance of that Fund over the long-term appeared favorable.

**The cost of services to be provided and profits to be realized by Artisan Partners.** The directors concluded that the Funds' overall expense ratios are competitive and demonstrate

90

FACTORS CONSIDERED IN RENEWING THE FUNDS' ADVISORY AGREEMENTS

Artisan Partners' history of effective management of the Funds' business and affairs. It was also concluded that reductions in the investment advisory fee schedule applicable to Value Fund would further enhance the competitiveness of the Fund's expense ratio. The directors concluded that the costs of services provided by Artisan Partners and the profits realized are reasonable in relation to the nature and quality of the services provided and in comparison to the fees charged by mutual funds considered by Lipper to be within the same peer category or universe.

**The extent to which economies of scale would be realized as each Fund grows and whether fee levels reflect these economies of scale for the benefit of Fund investors.** The directors concluded that the shareholders of International Fund, International Value Fund, Mid Cap Fund, Mid Cap Value Fund, Small Cap Fund, and Small Cap Value Fund have appropriately benefited from economies of scale under the management fee structures in the Advisory Agreements. The directors concluded that the shareholders of each of Global Value Fund and Growth Opportunities Fund are expected to benefit from economies of scale as soon as each Fund's assets reach the level at which the Fund will be able to take advantage of the investment advisory fee breakpoints in the Advisory Agreements. The directors also concluded that shareholders of Value Fund would benefit from economies of scale under the management fee structure in the Advisory Agreement due to reductions in the investment advisory fee schedule proposed by Artisan Partners and approved by the Board. It was also concluded that Artisan Partners had not achieved (nor was it likely to achieve) economies of scale in the management of International Small Cap Fund, because the Fund closed at a small asset level. The directors also concluded that Artisan Partners had appropriately put in place a low initial fee schedule in lieu of breakpoints for Emerging Markets Fund.

**Comparison of the services to be rendered and the amounts to be paid under the investment advisory agreement with those under other investment advisory agreements.** The directors concluded that the costs of the services provided by Artisan Partners and the profits realized are reasonable in relation to the nature and quality of services provided and in comparison to the fees charged and the array of services offered to other Artisan Partners clients, including its separate account clients.

**Other benefits derived by the Funds or Artisan Partners.** The directors concluded that, other than the services provided by Artisan Partners pursuant to the Advisory Agreements and the management fees paid in return, the Funds and Artisan Partners may potentially benefit from their relationship with each other in several ways. For Artisan Partners, the directors concluded there were two primary fall-out benefits: (1) the potential conversion of Fund shareholders to separate account clients; and (2) the acquisition of research products and services in return for commissions ("soft dollars"). The directors concluded that, although Artisan Partners derives or may derive those additional benefits, the Funds also could benefit from conversions of Artisan Partners' separate account clients to Fund shareholders and from the institutional shareholders who choose to invest in the Funds because they want Artisan Partners' services, but do not meet Artisan Partners' minimum separate account size requirements. The directors also concluded that the Funds benefit from Artisan Partners' use of soft dollars generated with respect to its separate account clients.

Following those discussions, the board approved the continuation of each Advisory Agreement through November 30, 2011 by the unanimous vote of all directors and also by the unanimous vote of all the "non-interested" directors.

91